**Kenneth Bernard HARRIS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 70167.**

Court of Criminal Appeals of Texas, En Banc.

April 22, 1992.

---

Will Outlaw, Connie B. Williams, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and J. Harvey Hudson, Glenn Gotschall and George Lambright, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

At a trial held in Harris County in late 1987 and early 1988, a jury found appellant, Kenneth Bernard Harris, guilty of capital murder. See Tex.Penal Code § 19.-03(a)(2). At the punishment stage of the trial, the jury answered affirmatively the special issues required by Article 37.071(b) of the Texas Code of Criminal Procedure,[1] and appellant's punishment was assessed at death. Direct appeal to this Court is automatic under Article 37.071(h). We will affirm the judgment of the trial court.

Viewed in the light most favorable to the jury's verdict, the evidence at trial established that on June 7, 1986, in Harris County, appellant strangled the victim while in the course of sexually assaulting her. Appellant does not challenge the sufficiency of the evidence to support the finding of guilt or the assessment of punishment.

In twenty points of error, appellant argues the trial court erred in: denying him the opportunity to cross-examine the prosecutor at his *Batson*[2] hearings; allowing the prosecutor to strike four black venirepersons solely on the basis of their race; denying appellant's motions to dismiss for want of a speedy trial; admitting in evidence, at the guilt/innocence stage, two incriminating, tape-recorded statements made by appellant after his arrest; denying appellant's motion for mistrial based on the State's failure to disclose evidence favorable to the defense; admitting evidence of extraneous misconduct at the punishment stage; refusing to instruct the jury to disregard certain testimony; and refusing to instruct the jury on the meaning of the term "deliberately" as used in the court's charge on punishment. Appellant also contends the prosecutor engaged in incurably harmful final argument at the punishment stage. We will address these points of error in the order in which they arose at trial.

■ In his first point of error, appellant argues the trial court erred in not allowing

---

1. Unless otherwise indicated, all articles cited in this opinion are in the Texas Code of Criminal Procedure.

2. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

him to cross-examine the prosecutor during pretrial hearings held pursuant to *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The State argues in response that appellant had no right to cross-examine the prosecutor during these hearings.

The record reflects that appellant is black and that the prosecutor peremptorily struck four black venirepersons: Dawnella Swan, Gloria Paul, Anthony Hackett, and Corine Charles. The record reflects also that after each strike, appellant objected that it was made solely on the basis of race, in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution. Although the trial court found each time that a prima facie showing of racial discrimination had been made, and then required the prosecutor to provide racially-neutral explanations for the strikes, the trial court did not allow appellant to cross-examine the prosecutor regarding those explanations.

On June 5, 1991, in an unpublished opinion, we sustained appellant's first point of error, abated the appeal, and remanded the cause to the trial court for a full, adversarial *Batson* hearing. We ordered that appellant be given an opportunity at that hearing to cross-examine the prosecutor with respect to the reasons the prosecutor had previously given for the peremptory strikes in question. See *Salazar v. State,* 795 S.W.2d 187, 192 (Tex.Cr.App.1990) (right to cross-examine prosecutor is necessary component of Fourteenth Amendment right to *Batson* hearing).

On January 30, 1992, another *Batson* hearing was held in the trial court, pursuant to this Court's order. Although given an opportunity at that time to cross-examine the prosecutor, appellant's counsel declined to do so on the ground that, unavoidably, he was "not ready to proceed." Appellant's counsel explained to the trial court that his file of appellant's case—

including his notes of the voir dire—had been "temporarily lost" and that he was unable to proceed without that file. He requested thirty additional days in which to search for the missing file. Appellant's counsel made this request despite the fact that he had been on notice since June 5, 1991, that another *Batson* hearing was pending.

The trial court, exhibiting commendable patience, gave appellant's counsel until February 27, 1992, to locate the missing file. Appellant's counsel apparently failed to do so, and on February 27, the trial court forwarded the record of the January 30 hearing to this Court.

Appellant does not now complain of the trial court's handling of the final *Batson* hearing. We hold, therefore, that with respect to his first point of error, appellant has received all the relief which he has requested or to which he is entitled.

■ In his second point of error, appellant argues the trial court erred in denying his *Batson* objections and allowing the prosecutor to peremptorily strike the four black venirepersons mentioned previously. Appellant argues that the voir dire record shows that the reasons the prosecutor gave for the peremptory strikes were mere pretexts for intentional racial discrimination. The State argues in response that the record supports the trial court's finding of no purposeful discrimination.

At the pretrial *Batson* hearings, the prosecutor testified that he struck venireperson Swan because, inter alia, Swan's brother was then on eight years probation for burglary [3]; that he struck venireperson Paul because she "expressed an inability to ... vote for the death penalty," i.e., to vote "yes" to the two punishment issues; that he struck venireperson Hackett because Hackett indicated that "he would hold the State to proof beyond any and all doubt [rather than proof beyond a *reasonable*

---

**3.** Implicit in such reason is, of course, the reasonable notion that such a venireperson might be biased against the prosecution.

doubt] before he could answer [punishment issues] one and two 'yes' "; and that he struck venireperson Charles because, inter alia, she stated that she could never answer "yes" to the two punishment issues.

■ The Fourteenth Amendment's equal protection clause prohibits purposeful racial discrimination by the State in its use of peremptory strikes. *Powers v. Ohio,* —— U.S. ——, 111 S.Ct. 1364, 1367, 113 L.Ed.2d 411 (1991); *Batson,* 476 U.S. at 85, 106 S.Ct. at 1717. To establish a prima facie[4] case of purposeful discrimination in the State's use of peremptory strikes,

> the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate. [Next], the defendant must show that [this] fact[ ] and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race....

> In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances....

> Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging [the] jurors [in question]. Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, ... the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause.... The prosecutor ... must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination.

*Batson,* 476 U.S. at 96–98, 106 S.Ct. at 1722–24.

■ Because the trial judge is able to evaluate the credibility of the witnesses at the *Batson* hearing before he makes his ruling, a reviewing court must view the record in the light most favorable to that ruling and must not disturb that ruling unless it is clearly erroneous. In other words, a reviewing court must not reverse a trial court's *Batson* decision unless the reviewing court is left with a firm conviction that a mistake has been committed. *Williams v. State,* 804 S.W.2d 95, 101 (Tex. Cr.App.), cert. denied, —— U.S. ——, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991); *Whitsey v. State,* 796 S.W.2d 707, 721 (Tex.Cr. App.1990).

Having carefully examined the record of the *Batson* hearing and the voir dire, we conclude that the trial court's finding of no purposeful discrimination is supported by the record and is not, therefore, clearly erroneous. The prosecutor's explanations for his peremptory strikes were racially neutral, logically related to the case to be tried, and based directly on the responses of the venirepersons in question. See *Tennard v. State,* 802 S.W.2d 678, 681–682 (Tex.Cr.App.1990) (venireperson properly struck because she was opposed to death penalty), cert. denied, —— U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991); *DeBlanc v. State,* 799 S.W.2d 701, 711–712 (Tex.Cr.App.1990) (venireperson properly struck because he would hold State to too-high burden of proof), cert. denied, —— U.S. ——, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991); *Wilson v. State,* 769 S.W.2d 682, 683 (Tex.App.—Beaumont 1989, no pet.) (venireperson properly struck because his family member was convicted of burglary). Furthermore, appellant has shown us nothing in the record indicating that the prosecutor's reasons mentioned above were pretexts for intentional discrimination. Appellant's second point of error is overruled.

**4.** In this context, a prima facie showing is that minimum quantity of evidence necessary to support a rational inference that the allegation of purposeful discrimination is true. *Dewberry v.* *State,* 776 S.W.2d 589, 590 (1989). Once a prima facie showing has been made, the allegation of discrimination must be found true unless rebutted by other evidence. *Id.*

■ In point of error number three, appellant argues the trial court erred in denying his motion, based on the Texas Speedy Trial Act, to dismiss the indictment for want of a speedy trial. The State argues in response that the Act is unconstitutional and cannot provide the basis for any relief.

We have held before that the Texas Speedy Trial Act, Article 32A.02, is invalid because it conflicts with the Texas Constitution's separation of powers provision. *Meshell v. State*, 739 S.W.2d 246, 257 (Tex. Cr.App.1987). Because the Act is invalid, it cannot provide the basis for the relief sought by appellant. *Robinson v. State*, 739 S.W.2d 795, 797 (Tex.Cr.App.1987); but see *Lapasnick v. State*, 784 S.W.2d 366 (Tex.Cr.App.1990). Point of error three is overruled.

■ In point of error number four, appellant contends the trial court erred in denying his motion, based on the federal and state constitutions, to dismiss the prosecution for want of a speedy trial.[5] The State counterargues (1) that the delay in bringing the case to trial was due to the complexity of the case and (2) that appellant has not demonstrated any particular prejudice from the delay.

With respect to this point of error, the record reflects the following relevant facts: Appellant was arrested on July 22, 1986, and his trial commenced thirteen months later, on August 17, 1987. He first raised the constitutional speedy trial claim in a written motion on the first day of trial, and a hearing on that motion was held immediately before trial. Although appellant's motion alleged that he had "suffered memory loss" as to certain events surrounding his arrest, he offered no evidence of any kind at the speedy trial hearing. As for the prosecutor, he advanced no explanation at the hearing for the delay in bringing appellant's case to trial.

In *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), the United States Supreme Court held that a balancing test must be used in determining whether an accused has been denied his federal constitutional speedy trial right. The factors to be weighed in the balance include, but are not limited to, the length of the delay, the reason for the delay, the defendant's assertion of the right, and the prejudice to the defendant resulting from the delay. *Id.* at 531, 92 S.Ct. at 2192. Although our state constitutional speedy trial right is independent of the federal guarantee, we have held nonetheless that a balancing test identical to the one established in *Barker* is to be used in determining whether a defendant has been denied his state speedy trial right. *Deeb v. State*, 815 S.W.2d 692, 704 (Tex.Cr.App.1991); *Chapman v. Evans*, 744 S.W.2d 133, 135 (Tex.Cr.App.1988); *Hull v. State*, 699 S.W.2d 220, 221–224 (Tex.Cr.App.1985).

■ The length of the delay is measured from the time the defendant is arrested or formally accused. *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971); *Hull v. State*, 699 S.W.2d at 221. The length of the delay is to some extent a triggering mechanism, so that a speedy trial claim will not be heard until passage of a period of time that is, prima facie, unreasonable under the existing circumstances. *Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. at 2192. We will assume arguendo that the thirteen month delay here was, prima facie, unreasonable under the circumstances. See 2 LaFave & Israel, *Criminal Procedure* § 18.2(b) (1984) (courts generally hold that any delay of eight months or longer is presumptively unreasonable and triggers speedy trial analysis).

As noted previously, the State argues that the delay in bringing the case to trial

---

**5.** The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." This speedy trial right was made applicable to state prosecutions by the due process clause of the

Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). Article I, § 10, of the Texas Constitution provides in relevant part that "[i]n all criminal prosecutions the accused shall have a speedy public trial."

was due to the case's complexity. Although the State made no such argument before the trial court, it is apparent from the record that the prosecution's case was in fact quite complicated and doubtlessly required a great deal of preparation. Indeed, our examination of the record shows that the State presented 51 witnesses and 161 exhibits during appellant's five-month trial.

As for appellant's assertion of his constitutional right, we noted previously that he did not invoke his right until the day of trial. Although this failure to invoke the right earlier did not amount to a waiver, "failure to assert the right ... make[s] it difficult for a defendant to prove he was denied a speedy trial." *Barker v. Wingo*, 407 U.S. at 532, 92 S.Ct. at 2193. In other words, appellant's lack of a timely demand for a speedy trial indicates strongly that he did not really want a speedy trial.

■ The final factor of prejudice must be assessed in the light of the interests of defendants which the speedy trial right was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. Id. The first and second interests are, of course, applicable to appellant, as they would be to any defendant, but there is no evidence in the record that the third interest is implicated in this case at all.

Having briefly addressed the four *Barker* factors, we must now "balance" them.[6] We note first that while the thirteen-month delay between appellant's arrest and trial was by no means trivial, it was also not extraordinary given the complexity of the prosecution's case against appellant. That fact, coupled with appellant's failure to invoke his constitutional speedy trial right until trial and the lack of evidence of any particularized prejudice to him, leads us to conclude that the balance is clearly in favor of the State. Thus, the trial court did not err in overruling appellant's state and federal constitutional speedy trial motion. Point of error number four is overruled.

■ In points of error numbers seventeen and eighteen, appellant contends the trial court erred in admitting in evidence, at the guilt/innocence stage of his trial, two incriminating, tape-recorded statements he gave to police shortly after he was arrested. Appellant contends that the statements were obtained in violation of his Fifth Amendment right against self-incrimination and his alleged Fourth Amendment "right to privacy."

With respect to these points of error, the record reflects the following relevant facts: Immediately after appellant was arrested, he was informed of his *Miranda*[7] rights and taken to a Houston police station, where he was again told of his rights by a magistrate. The magistrate also explained to appellant that he was accused of capital murder. Shortly thereafter, police officers asked appellant whether he wished to make a statement regarding the allegation against him. Appellant replied that he would but that he wished to speak with his father first. Police officers then contacted appellant's father, who went to the police station and spoke privately with appellant. Following that private conversation, the police officers asked appellant's father what appellant had said. Appellant's father responded that appellant had told him about the capital murder in question. Shortly after that, appellant made the recorded statements in question.

Appellant now argues that, at the time in question, his father "was acting as an agent of the State" and that he made the tape-recorded statements as a "result" of his conversation with his father. Appellant goes on to argue that his Fifth Amendment right "to cut off questioning was not scru-

---

6. Appellant does not suggest that any other factors should be considered in the balancing process.

7. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

pulously honored in that the police in fact did not cut off questioning, but continued to question appellant through his father." The State counterargues simply that appellant's arguments are not preserved for appellate review because they were not made in the trial court.

Appellant does not cite any place in the record where his arguments were made to the trial court, or where a ruling was obtained on such arguments. Because the right to appellate review extends only to complaints made in accordance with our rules of appellate review, we hold that appellant's complaint is not preserved for our review. Tex.R.App.Proc. 74 and 210; *Foster v. State*, 779 S.W.2d 845, 864 (Tex.Cr. App.1989), cert. denied, 494 U.S. 1039, 110 S.Ct. 1505, 108 L.Ed.2d 639 (1990); *Phillips v. State*, 511 S.W.2d 22, 25–26 (Tex.Cr.App. 1974). Points of error seventeen and eighteen are overruled.

■ In point of error nineteen, appellant also contends the trial court erred in admitting in evidence his two videotaped statements because those statements were not admissible under Article 38.22, § 3(c). The State responds that the videotaped statements were admitted at trial under the provisions of Article 38.22, § 3(*a* ).

Again, appellant has not cited any place in the record where his objection was made to the trial court, or where he obtained a ruling on that objection. Accordingly, we hold the argument not preserved for appellate review. Point of error nineteen is overruled.

■ In point of error six, appellant maintains the trial court erred in denying his motion for mistrial made at the punishment stage of trial. Appellant argues, as he did in his motion, that his Fourteenth Amendment right to due process was violated because the State intentionally withheld evidence favorable to him despite his pretrial request that it inform him of any such evidence. More specifically, appellant complains that the State failed to inform him that D__ A__, a prospective prosecu-

tion witness at the punishment stage, failed to identify him in a photographic array shown to her in late 1987.

The record reflects that D__ A__ testified at appellant's trial, outside the presence of the jury, that appellant had sexually assaulted her on July 1, 1982, but that she had been unable to identify him in an array of six photographs shown to her by police in early December 1987. The record reflects also that D__ A__ did not testify before the jury at all.

Appellant argues that the State should have informed him soon after D__ A__ was shown the photographic array that she had been unable to identify appellant. Appellant argues that "the information suppressed was favorable to [him] in that the witness' inability to identify [him] as the person who sexually assaulted her casts doubt upon whether [he] had sexually assaulted other women." The State counterargues that its failure to inform appellant about the event in question could not possibly have harmed him because D__ A__ did not testify before the jury.

■ The suppression by the prosecution of evidence favorable to an accused violates the Fourteenth Amendment due process clause if the evidence is material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). Such evidence is "material" only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985); *Ex parte Brandley*, 781 S.W.2d 886, 893 (Tex.Cr. App.1989), cert. denied, —— U.S. ——, 111 S.Ct. 61, 112 L.Ed.2d 35 (1990); *Ex parte Adams*, 768 S.W.2d 281, 290 (Tex.Cr.App. 1989). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *United States v. Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383.

Since D__ A__ did not testify at appellant's trial, we cannot discern how the

State's failure to inform appellant of the events in question could have affected the result of his trial. Given the particular facts of this case, we see no reasonable probability that, had the evidence been disclosed to appellant, the result of his trial would have been different. Point of error six is overruled.

 In point of error number seven, appellant contends the trial court erred in allowing State's witness K___ B___ to tentatively identify him, at the punishment stage, as the man who sexually assaulted her and stole her camera on May 3, 1986, in Harris County. Appellant argues that the Fourteenth Amendment due process clause prohibited K___ B___'s testimony because that testimony followed a pretrial lineup procedure in which the police informed K___ B___ that the lineup contained a suspect. In other words, appellant argues that the lineup was unnecessarily suggestive and created a substantial likelihood of irreparable misidentification. See *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The State counterargues that the lineup was not rendered unnecessarily suggestive simply because K___ B___ was informed it contained a suspect.

We agree with the State. A lineup is not rendered unnecessarily suggestive simply because the complainant is told that it contains a suspect, because a complainant would normally assume that to be the case. *Webb v. State*, 760 S.W.2d 263, 268 (Tex.Cr. App.1988), cert. denied, 491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 709 (1989). Point of error seven is overruled.

 In point of error eight, appellant argues the trial court erred in allowing State's witness J___ K___ to identify him, at the punishment stage, as the man who sexually assaulted her in Harris County on December 27, 1985. Appellant contends again that the in-court identification was tainted by an unnecessarily suggestive pretrial occurrence, this time involving the dis-play to J___ K___ of a single photograph of appellant. See *Coleman v. State*, 505 S.W.2d 878, 880 (Tex.Cr.App.1974) (showing complainant only photographs of defendant unnecessarily suggestive). The State counterargues that even if the pretrial occurrence here was unduly suggestive, the totality of the circumstances indicates that J___ K___'s in-court identification was nonetheless reliable and therefore admissible.

J___ K___ testified outside the presence of the jury that she was sexually assaulted on December 27, 1985, in Harris County. She testified further that the assault lasted approximately one hour; that during that hour she could see the assailant's face and body; that the assailant wore no disguise; and that she later gave the police a detailed description of the assailant. She also testified that in July 1986 she took up residence in Maryland; that in September 1986 she was visited in Maryland by a former coworker, Marty Gonzales, who resided in Houston; that Gonzales showed her a Houston Chronicle newspaper article about appellant's arrest for the capital murder in question; that the article included a photograph of appellant; and that she "recognized the face immediately" as that of her assailant.

 Due process of law prohibits the admission of identification testimony that is inherently unreliable. If identification testimony follows unnecessarily suggestive pretrial procedures, that testimony will still be admissible if the totality of the circumstances indicates that the testimony is reliable. *Manson v. Brathwaite*, 432 U.S. at 113–114, 97 S.Ct. at 2252–53. Stated differently, the identification testimony will be admissible if the indicia of reliability outweigh the apparent corrupting effect of the unnecessarily suggestive pretrial occurrence. The burden is on the defendant to show by clear and convincing evidence that the in-court identification is unreliable. *Madden v. State*, 799 S.W.2d 683, 695 (Tex. Cr.App.1990), cert. denied, ─── U.S. ───, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991).

Even assuming arguendo that the pretrial occurrence in question was unnecessarily suggestive, we conclude that appellant did not carry his heavy burden of showing that J___ K___'s testimony was unreliable. The evidence before the trial court was that J___ K___ had an unobstructed view of her assailant for an entire hour. There was no evidence that J___ K___'s in-court identification of appellant was based on the photograph shown to her by Gonzales, or that her initial description of her attacker given to police was inaccurate, or that she ever identified anyone else as her attacker, or that she ever failed to identify appellant as her attacker. In short, there is no evidence in the record showing that J___ K___'s identification testimony was so unreliable as to be prohibited as a matter of due process. From the totality of the evidence before him, the trial judge could reasonably conclude that J___ K___'s testimony was reliable despite the allegedly unnecessarily suggestive pretrial occurrence. Thus, the trial court did not err in allowing her testimony to be presented to the jury. Point of error number eight is overruled.

 Appellant argues in point of error nine that the trial court erred in allowing State's witness S___ T___ to identify him, at the punishment stage, as the man who sexually assaulted her on April 24, 1986, in Harris County. Appellant contends the in-court identification was unreliable because it followed an unnecessarily suggestive pretrial lineup. The State argues again that even if the pretrial lineup was overly suggestive, the totality of the circumstances indicates that the in-court identification testimony was reliable.

S___ T___ testified outside the presence of the jury that she was sexually assaulted in her home in Harris County on April 24, 1986; that during the attack she could see her attacker's face; that her attacker wore a striped "Polo" shirt and dark pants; that on July 22, 1986, she identified appellant as

her attacker in a five-man lineup at a Houston police station; and that her in-court identification of appellant as her attacker was based on her recollection of the assault and not her experience at the lineup.

The record reflects that appellant wore a striped "Polo" shirt in the lineup, but the record does not show what the other four men in the lineup were wearing. Appellant argues that the pretrial lineup was unnecessarily suggestive because appellant was wearing a shirt similar to the one worn by S___ T___'s assailant.

We hold again that appellant has not shown that S___ T___'s identification testimony was inherently unreliable and inadmissible. Although the pretrial lineup was possibly suggestive, S___ T___ testified that she saw her assailant's face at the time of the assault and that her in-court identification of appellant as her assailant was based on her memory of the assault and not her experience at the lineup. Thus, the trial court had an adequate basis for concluding that her testimony was reliable. Point of error number nine is overruled.

 In his tenth point of error, appellant argues the trial court erred in allowing State's witness Pedro Juan Martinez to identify him, at the punishment stage, as the person who pawned a camera[8] at a pawn shop in Houston on June 9, 1986. Appellant argues that Martinez's identification of him was unreliable because on July 23, 1986, Martinez, shortly after identifying appellant in a police photo spread, learned from a televised news report that appellant had been arrested. Appellant does not challenge the manner in which the photo spread procedure was carried out. The State argues in response that the photo spread and televised news report were completely irrelevant to Martinez's identification testimony.

Martinez testified outside the presence of the jury that on June 9, 1986, he was employed as a clerk at a pawn shop in

---

**8.** Other evidence showed that this camera was the one stolen from K___ B___.

Houston; that on that date an individual purporting to be Kenneth Bernard Harris pawned a camera for $50;[9] that appellant was in fact the individual in question; that he spoke with appellant for approximately five minutes on that occasion; that on July 23, 1986, police officers came into the pawn shop, showed him six photographs of black men, and asked him whether any of the men had visited the shop; that he immediately recognized appellant in one of the photographs; and that he learned later that day on television that appellant had been arrested. Martinez testified also that his in-court identification of appellant as the person who pawned the camera was based on his recollection of the events of June 9, 1986 (the pawn transaction) and not the events of July 23, 1986 (the photo spread procedure).

Our review of the record persuades us again that appellant failed to provide clear and convincing evidence to the trial court that Martinez's testimony was unreliable. We fail to see how the July 23, 1986, photo spread and televised news report could have rendered Martinez's testimony unreliable. Point ten is overruled.

■ In points of error eleven and twelve, appellant complains that the trial court erred, at the punishment stage, in admitting the testimony of J___ K___ and S___ T___ that they were sexually assaulted. Appellant claims that the State failed to clearly prove that he was the perpetrator of this extraneous misconduct. The State argues in response that its evidence did prove appellant was the perpetrator.

We need not reach the merits of appellant's arguments, because they were not presented to the trial court. Tex.R.Crim. Evid. 103(a)(1); Tex.R.App.Proc. 52(a); *Long v. State*, 800 S.W.2d 545, 548 (Tex.Cr. App.1990). Points eleven and twelve are overruled.

■ In point of error thirteen, appellant contends the trial court erred, at the pun-

ishment stage, in admitting the testimony of C___ L___ that she was sexually assaulted in Harris County on December 10, 1986. Appellant argues that "there was never a clear showing that [he] committed the alleged offense, in that [C___ L___] never identified [him] as the person who sexually assaulted her." The State responds that "the identity of [C___ L___'s] attacker was established by a latent fingerprint which the appellant left on a bottle of prescription medication inside the victim's apartment."

■ Evidence of extraneous misconduct is admissible at the punishment stage of a capital murder trial if that evidence is "relevant to sentence." Article 37.071, § 2; *Allridge v. State*, 762 S.W.2d 146, 162 (Tex. Cr.App.1988), cert. denied, 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989). Plainly, such evidence cannot be relevant to sentence, however, unless the State also presents evidence that, if believed, establishes that the defendant himself committed the extraneous misconduct. In the instant case, the State presented evidence that a print of appellant's right index finger was found on a prescription medicine bottle in C___ L___'s home. Furthermore, C___ L___ testified that her attacker handled the prescription medicine bottle in question, and that before the time of the assault she had never seen appellant handle that prescription medicine bottle. Thus, there was evidence before the jury that, if believed, established that appellant was in fact C___ L___'s attacker. Point thirteen is overruled.

■ In points of error fourteen and fifteen, appellant argues he was

denied due process and equal protection as accorded him under the 14th Amendment to the United States Constitution when the [trial] court allowed the introduction of [extraneous misconduct] evidence during the punishment phase of trial. In a non-capital murder case, evidence of an accused's prior criminal record is limited to a final conviction, or a

---

9. See footnote eight, ante.

case in which the accused received a probated or suspended sentence.

As the State points out, however, "[w]e have consistently held that evidence of unadjudicated extraneous offenses is admissible at the penalty stage of a capital murder trial, and that such admission does not deprive an accused of due process and equal protection under the law." *McCoy v. State*, 713 S.W.2d 940, 954 (Tex.Cr.App. 1986), cert. denied, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). Points of error fourteen and fifteen are overruled.

■ In point of error sixteen, appellant argues the trial court erred, at the punishment stage, in refusing to instruct the jury to disregard the testimony of State's witness Manuel Acosta. Appellant argues now, as he did below, that although Acosta testified about certain extraneous misconduct, he failed to identify appellant as the perpetrator of that conduct. The State concedes that Acosta did not identify appellant as the perpetrator, but it insists that other evidence did establish appellant as the perpetrator.

Acosta testified that on September 18, 1980, he was employed at a Chevrolet automobile dealership in Houston, and that on that date he observed two men steal a Chevrolet Camaro. Although Acosta did not identify appellant as one of the two thieves, the trial court did admit other evidence from which the jury could reasonably conclude that appellant was in fact one of the thieves. First, the trial court admitted a certified copy of the indictment in Harris County cause number 329656, dated February 18, 1981, that alleged that one Kenneth Branard [sic] Harris stole an automobile from one Manuel Acosta in Harris County on September 18, 1980. Second, the trial court admitted a certified copy of the judgment in that cause, which stated that one Kenneth Branard [sic] Harris pled guilty to the offense charged. Third, the trial court admitted a certified copy of a bail bond for one Kenneth *Bernard* Harris in the same cause, which bond contained the thumbprint of the defendant in that cause.

Fourth, the trial court admitted the testimony of State's witness Sherry Grounds, who testified that she was a fingerprint expert with the Harris County Sheriff's Office and that the thumbprint on the bail bond matched a thumbprint taken from appellant. Point sixteen is overruled.

■ In point five, appellant argues the trial court erred, at the punishment stage, in denying his requested jury instruction defining the term "deliberately" as used in the first punishment issue. Again, however, as the State points out, we have repeatedly held that the trial judge need not define the term "deliberately" in its charge to the jury on punishment. See *McGee v. State*, 774 S.W.2d 229, 240 (Tex.Cr.App. 1989), cert. denied, 494 U.S. 1060, 110 S.Ct. 1535, 108 L.Ed.2d 774 (1990). Point five is overruled.

■ Finally, appellant argues in point twenty that the prosecutor committed reversible error in his final argument at the punishment stage. Appellant complains of the portion of the prosecutor's argument in which he discussed the testimony of defense witness Dr. Priscilla Ray, a psychiatrist:

PROSECUTOR: My understanding of the law and all the evidence you heard is that, first, Dr. Ray did not testify at all about [punishment] issue number one. Remember me asking her, "Dr. Ray, are you down here to talk about issue number one?" "No." "Dr. Ray, are you down here to say the defendant was insane at the time of the offense?" "No, I am not saying that." Remember her saying that, the psychiatrist? "Dr. Ray, are you here to say the defendant is not competent to stand trial?" "No, I'm not saying that either." So, practically, Dr. Ray told you in her opinion the defendant was sane at the time of the commission of the offense.

So based upon the defense testimony from the experts, you can forget temporary insanity due to intoxication. Because before you would ever use that as

any kind of mitigating factor in the penalty issues, you would first have to believe that the defendant was temporarily insane.

Appellant made no objection to this argument at trial, but he now contends that "[t]he argument, in effect, told the jury to disregard certain vital evidence which the jury was obligated to consider in determining the punishment in this case." Appellant does not explain what "vital evidence" he is referring to. The State argues in response simply that the prosecutor's argument was an accurate summary of the evidence.

 There are four areas of permissible prosecutorial jury argument: summation of the evidence, reasonable deduction from the evidence, answer to argument of opposing counsel, and plea for law enforcement. *Brown v. State,* 692 S.W.2d 497, 502 (Tex.Cr.App.1985). If the prosecutor strays outside these areas, the defendant, to preserve error, must object until receiving an adverse ruling. *Harris v. State,* 784 S.W.2d 5, 12 (Tex.Cr.App.1989), cert. denied, 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990). An exception to this contemporaneous objection requirement exists when the prosecutor's argument is so prejudicial that an instruction to disregard the argument could not cure the harm. *Id.* If this exception is applicable to appellant's case, we cannot know it because, as noted previously, appellant does not explain what "vital evidence" the prosecutor's argument supposedly told the jury to disregard. Point of error number twenty is overruled.

The judgment of the trial court is AFFIRMED.

CLINTON, J., concurs in result.