GAYTEN 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 




NO. 3-93-241-CR




JIMMY RAY GAYTEN,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 



FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT



NO. 0911572, HONORABLE JON N. WISSER, JUDGE PRESIDING


 




 On June 14, 1991, appellant Jimmy Ray Gayten was convicted of the murder of
Alonso Resendes Hinojosa and sentenced to forty-five years in prison. See Penal Code, 63d Leg.,
R.S., ch. 399, sec. 1, § 19.02, 1973 Tex. Gen. Laws 883, 913, amended by Act of May 28,
1973, 63d Leg., R.S., ch. 426, art. 2, § 1, 1973 Tex. Gen. Laws 1122, 1123 (Tex. Penal Code
Ann. § 19.02, since amended). Appellant filed notice of appeal alleging four points of error
relating to the introduction of evidence identifying him as Hinojosa's murderer. Appellant
contends in his first three points that the trial court erred in admitting the pretrial and in-court
identification testimony of three witnesses who were shown a photographic line-up. Appellant
asserts in his final point that the trial court erred in admitting evidence that he possessed drug
paraphernalia when arrested on the night of the murder. We will affirm.



BACKGROUND


 Alonso Resendes Hinojosa was stabbed to death near the intersection of Seventh
Street and Webberville Road in Austin on the evening of July 9, 1990. Hinojosa had spent the
afternoon of July 9 drinking beer with Abigail Acosta, a known prostitute, in an east Austin park. 
When Acosta began talking to some other friends, Hinojosa became angry and left the park. 
Some time later, Acosta went home and took a nap. In the early evening, Acosta left the house
and met a black man she had never seen before who introduced himself as "Jimmy." Jimmy asked
Acosta if she wanted to use some drugs. Acosta said she did, and the pair bought cocaine, which
they used intravenously.

 Acosta and Jimmy talked with Kenneth Carr, who was standing in the front yard
of his mother's home with friends. Carr knew Acosta from the neighborhood, but did not know
or recognize Jimmy. Carr warned Acosta not to go into the backyard of the house because dogs
were loose and it was dangerous. Jimmy said something to the effect of "It's dangerous out here,"
which Carr perceived as a threat. After about fifteen minutes, Jimmy and Acosta walked off,
holding hands.

 In the interim, Hinojosa had returned to the neighborhood and had begun to follow
Jimmy and Acosta as they walked down Webberville Road. Hinojosa cursed at Acosta, and they
had a brief argument about money. Acosta continued walking, but Jimmy turned around, walked
back toward Hinojosa, and confronted him. Acosta saw Jimmy reach under his shirt and
presumed he was drawing a knife. Frightened, Acosta ran down Webberville Road and stopped
in front of a convenience store on Seventh Street. About five minutes later, Jimmy ran up to
Acosta on the street. When Acosta asked him what had happened, Jimmy said, "He's dead."

 John Lee Hodges was standing on Webberville Road, and witnessed the events
before, during, and after Hinojosa's murder. Hodges saw Acosta with a black male and saw
Hinojosa following them and cursing at Acosta. The man he saw with Acosta confronted and
stabbed Hinojosa in the neck several times, and then searched Hinojosa's pockets. The man then
ran past Hodges and approached Acosta. Hodges testified that the man had some money in his
hand and told Acosta to leave the area quickly. 

 Police found Hinojosa lying face-down on the sidewalk across from the H & H
Tavern on Webberville Road between 10:00 and 10:30 p.m. He had been stabbed eighteen times
in the neck and back, his pockets were turned out, and his wallet was missing. Hinojosa died
from his wounds shortly after EMS arrived.

 In an apparently unrelated event, Officers Chris Lamb and Ralph DelaFuenta had
stopped a man at around 3:15 a.m. on July 10 who identified himself as Jimmy Ray Gates. The
officers questioned the man about the robbery of a gas station in the area of Eleventh Street and
IH-35. The officers then frisked the man and found a syringe and a pipe used for smoking crack
cocaine. When the gas station attendant could not identify the man as the robber, the officers
released him. 

 In the early morning hours of July 10, 1990, Austin Police Department homicide
detectives developed a suspect in Hinojosa's murder named Jimmy Ray Gayten or Jimmy Ray
Gates and created a photo line-up that included his picture. Acting on information from
bystanders at the scene, officers brought Acosta into the police station around 3:30 a.m. on July
10 and showed her a photo line-up consisting of six photographs of similar looking black males
of approximately the same age and build. Acosta identified photo number two as the "Jimmy"
she had spent the evening with and had seen confronting Hinojosa. Photo number two was a
photograph of the appellant, Jimmy Ray Gayten. Later that morning, Kenneth Carr viewed the
same photo line-up and identified appellant's photo as that of the man whom he had seen with
Acosta. John Lee Hodges was arrested for burglary and drug possession on July 10, and, while
in custody, picked appellant out of the photo line-up as the man who had been with Acosta,
stabbed Hinojosa, and fled the scene. Based on these identifications, homicide officers arrested
appellant for the murder of Hinojosa. When arrested, appellant was in possession of a pipe and
syringe as well as a duffel bag containing some damp clothing but no knife, wallet, or money. 



 DISCUSSION


I. THE ADMISSIBILITY OF THE WITNESS IDENTIFICATIONS 

 In his first three points of error, appellant argues that the trial court erred in
admitting the identification testimony of three witnesses because officers of the Austin Police
Department were improperly suggestive in showing the witnesses a photo line-up that included
appellant's picture. We use a two-step analysis to determine the admissibility of an in-court
identification following a pretrial identification by photograph. First, the photographic display
must not be improperly suggestive. Second, if the display is deemed to have been suggestive
based on the individual facts and circumstances of the case, the suggestive line-up must not give
rise to a very substantial likelihood of irreparable misidentification. Simmons v. United States,
390 U.S. 377, 384 (1968); Cantu v. State, 738 S.W.2d 249 (Tex. Crim. App. 1987).



A.  Kenneth Carr's Identification

 Appellant argues in his first point of error that the trial court erred in admitting
Kenneth Carr's pretrial and in-court identifications of appellant because the photo line-up that Carr
viewed was improperly suggestive, and because the State failed to show by clear and convincing
evidence that Carr's in-court identification of appellant had an origin independent of the tainted
photo line-up. Appellant concedes that the "Jimmy" seen with Abigail Acosta on the night of
Hinojosa's murder is the man who committed the murder. The State elicited Carr's testimony in
order to identify appellant as the man in the company of Acosta when Hinojosa began to follow
the pair.

 The photo line-up shown to all three of the witnesses in question consisted of six
photographs of similar looking men, with appellant's photograph labeled as number two. The
police showed Carr the line-up and asked him to identify the man he had seen with Acosta earlier
that evening. Carr viewed the line-up and told police that he personally knew three of the
individuals and that they were not with Acosta that night. Carr also stated that two of the
individuals looked nothing like the man he had seen with Acosta. Appellant does not contend that
the officer who showed the line-up to Carr was improperly suggestive. At trial, Carr testified that
appellant's photograph looked "closest" to the man he had seen with Acosta. When asked in court
to point out the man he had seen with Acosta that night, Carr identified appellant. Under direct
and cross-examination, Carr made it clear that his identification was based on seeing appellant the
night of the murder, and that he was absolutely certain in his identification because he
remembered appellant's threats. 

 Under the Simmons rule, identification procedures have been found not to be
suggestive where a defendant's photograph is presented to a witness with several others and is not
distinctive. See Rivera v. State, 808 S.W.2d 80 (Tex. Crim. App.), cert. denied, 112 S.Ct 279
(1991) (holding photo line-up procedure not improperly suggestive where witness was shown five
photographs of similarly posed Hispanic males of approximately the same age and appearance). 
In Texas, photo line-ups have been found to fail the first step of the Simmons analysis where a
witness was shown a single photograph and told that the person was in custody and under
indictment. Delk v. State, 855 S.W.2d 700 (Tex. Crim. App. 1993). Other photo line-ups that
have failed the first step of the analysis include instances where witnesses were shown a
photograph of the defendant wearing the uniform of the store that had been robbed, Perry v. State,
669 S.W.2d 794 (Tex. App.--Houston [1st Dist.] 1984), rev'd on other grounds, 703 S.W.2d 668
(Tex. Crim. App. 1986), and where a witness was shown several photo displays on different
occasions, each containing the photograph of the suspect. Cantu, 738 S.W.2d at 251-52. 

 We hold that, under the circumstances, the photo array Carr viewed was not
improperly suggestive. Although the line-up effectively consisted of three, rather than six
photographs because Carr personally knew three of the men, this fact does not render the line-up
improperly suggestive. Three photographs remained of similar looking men whom Carr had never
seen. Appellant argues that the remaining three-man line-up was improperly suggestive because
Carr stated that two of the men did not look like appellant and therefore had no choice but to pick
appellant as the man he had seen with Acosta. This does not render the line-up improperly
suggestive. Carr told the officer that appellant's photograph looked most like the man he had seen
with Acosta that evening, and the officer did not tell Carr that he had picked the correct person.

 Despite his contention to the contrary, appellant bears the burden to show by clear
and convincing evidence that Carr's in-court identification was unreliable because it was the fruit
of an improperly suggestive photo line-up. Harris v. State, 827 S.W.2d 949, 959 (Tex. Crim.
App. 1990), cert. denied, 113 S.Ct. 381 (1991). Appellant has not met this burden. Carr
testified that his in-court identification was based solely on his memory from the night of the
murder. He saw appellant in daylight, at close range for a period of up to fifteen minutes, and
testified that he vividly remembered appellant because of being threatened. Carr also testified that
he did not discuss the photo line-up with anyone between the time of the line-up and his
identification of appellant in court.

 Because the trial court did not err in admitting Kenneth Carr's pretrial and in-court
identifications, we overrule appellant's first point of error.



B.  Abigail Acosta's Identification

 Appellant argues in his second point of error that the trial court erred in admitting
Abigail Acosta's pretrial and in-court identification because the police officer who showed her the
photo line-up was improperly suggestive. Under vigorous cross-examination by appellant's
counsel, Acosta stated that the officer who showed her the photo line-up told her that a suspect
in Hinojosa's murder was in custody, that the police believed the suspect had killed in self-defense, and that he had confessed. Sergeant Michael Huckaby, who showed Acosta the line-up,
denied making these statements to Acosta.

 Even assuming, arguendo, that Sergeant Huckaby told Acosta that a suspect was
in custody and that he had confessed, appellant still does not show how such communication was
improperly suggestive. Appellant argues that because Acosta was told that a suspect had already
confessed, she was given the impression that her identification did not matter. Logically, that may
be true, but appellant does not show how the officer's relaying this information to Acosta led her
to pick appellant's photograph out of the array. A line-up is not rendered improperly suggestive
simply because a witness is told that it contains a suspect's photograph. Harris, 827 S.W.2d at
959. A witness would normally assume that to be the case. Id.

 As with Carr's identification, appellant has not met his burden of showing by clear
and convincing evidence that the in-court identification had no basis independent of an allegedly
improper pretrial photo array. Acosta was certain in her in-court identification of appellant. 
Though she had used drugs on the night of the murder, Acosta and corroborating witnesses
testified that she was not intoxicated. She spent approximately two hours with appellant in
daylight hours. See id. at 959-60 (holding that in-court identification was reliable and admissible
notwithstanding any suggestive pretrial identification where victims saw attacker in close contact
for an extended period of time). 

 The officer who showed Acosta the photo line-up was not improperly suggestive,
and the trial court did not err in admitting her pretrial and in-court identification of appellant. We
overrule appellant's second point of error. 


 

C.  John Lee Hodges's Identification

 Appellant asserts as his third point of error that the trial court erred in admitting
John Lee Hodges's pretrial identification of appellant. When shown the same photo line-up the
morning after the murder, Hodges identified appellant as the man he had seen stab Hinojosa. 
Appellant argues that the police were improperly suggestive in showing Hodges the photo line-up
that included appellant's picture.

 Hodges refused or was unable to identify appellant at trial, but the court allowed
the State to question Hodges about his pretrial identification and a statement he made to police in
which he identified appellant's photograph as that of the man he had seen stab Hinojosa. (1) Hodges
testified he believed that the officer who showed him the array told him that Hinojosa's killer was
in the array but did not suggest which photo was appellant. The officer who conducted the line-up
testified that he neither told Hodges that the guilty man was in the array nor suggested which
photo to choose.

 Simmons does not neatly apply to this witness's testimony. In Simmons and the
cases in which it is applied, a witness identified the defendant in court after viewing a photo line-up. Simmons serves to guard against the harm that a defendant may be convicted based on a
faulty in-court identification itself based on an improperly suggestive line-up. The potential harm
here is of a different character. Hodges steadfastly maintained that his pretrial identification of
appellant was tentative and that he could not identify appellant in court. The State did not use
Hodges's statement for purposes of identifying appellant, but instead used the tentative pretrial
identification to counter Hodges's contention that he could not identify appellant in court. Thus,
the admission of the pretrial identification served as an impeachment by a prior inconsistent
statement. Tex. R. Crim. Evid. 612(a). Hodges was told the contents of his statement to police,
the time, place, to whom it was made, and given an opportunity to explain the statement as
required by Rule 612(a). 

 We nonetheless recognize that there was a potential for harm in admitting Hodges's
pretrial identification if it was a product of improper suggestion. Because of the substance of the
prior inconsistent statement, the impeachment could have had the effect not only of damaging
Hodges's credibility generally, but also of leaving the jury with the impression that Hodges had,
in fact, previously identified appellant. The officer who showed Hodges the line-up denies having
told him that it included the appellant's picture. Hodges, when asked if the officer said any such
thing, answered, "I believe he said something like that, yeah." Regardless, a line-up is not
rendered unnecessarily suggestive simply because a witness is told that it contains a photograph
of the suspect. Harris, 827 S.W.2d at 959. 

 Analyzing the trial court's actions in light of these facts, we hold that it did not err
in admitting Hodges's pretrial identification of appellant. We overrule appellant's third point of
error. 



II.  ADMISSIBILITY OF EVIDENCE OF THE EXTRANEOUS OFFENSE

 In his fourth point of error, appellant contends that the trial court erred in admitting
evidence that he possessed drug paraphernalia at the time of his arrest. Appellant argues that
possession of drug paraphernalia was an inadmissible extraneous offense.

 Appellant initially questioned Sergeant Ralph DelaFuenta of the Austin Police
Department outside the presence of the jury about what appellant had in his possession when
arrested. Appellant asked if DelaFuenta had found a knife, a knife sheath, or any money in
appellant's possession; DelaFuenta responded that he did not. However, DelaFuenta further
testified that he did find a crack pipe and a syringe on appellant. In the presence of the jury,
appellant recalled DelaFuenta and again elicited the testimony that he found no knife or money
on appellant. Over appellant's objection, the State elicited on cross-examination of DelaFuenta
the testimony that the pipe and syringe had been found. 

 A crack pipe and syringe are both drug paraphernalia as defined in the Texas
Controlled Substances Act. Controlled Substances Act, 71st Leg., R.S., ch. 678, sec. 1,
§ 481.002(17), 1989 Tex. Gen. Laws 2230, 2905-06 (Tex. Health & Safety Code Ann.
§ 481.002(17), since amended). Possession of drug paraphernalia is illegal under section
481.125(a) of the Controlled Substances Act. Under Texas Rule of Criminal Evidence 404(b),
evidence of other crimes, wrongs or acts is not admissible to prove the character of a defendant,
but is admissible for other purposes, including proof of motive, opportunity, intent, plan, and
identity. Tex R. Crim. Evid. 404(b). The exceptions listed in Rule 404(b) are not exclusive or
exhaustive, but merely representative. Robinson v. State, 844 S.W.2d 925, 929 (Tex.
App.--Houston [1st Dist.] 1992, no pet.).

 The Court of Criminal Appeals has recognized that the question of whether to admit
evidence under Rule 404(b) is essentially one of relevancy. Montgomery v. State, 810 S.W.2d
372, 391 (Tex. Crim. App. 1990) (opinion on rehearing). Texas Rule of Criminal Evidence 401
defines "relevant" evidence as being that which has "any tendency to make the existence of any
fact of consequence to the determination of the action more probable or less probable than it
would be without the evidence." Tex. R. Crim. Evid. 401. Reasonable persons may disagree
whether any particular piece of evidence is relevant. Montgomery, 810 S.W.2d at 391. The court
has held that questions of relevancy are institutionally assigned to the trial court, which has the
best vantage to decide such questions. Id. Thus, whether objected-to evidence of extraneous
offenses has relevance apart from character conformity is a question for the trial court, and we
will uphold a trial court's ruling absent an abuse of discretion. As long as the trial court's ruling
is within the zone of reasonable disagreement, we will not interfere. Id. 

 Appellant argues that when extraneous offenses are offered to prove a defendant's
identity, the extraneous offense must be substantially similar to the charged offense to be
admissible. See Castillo v. State, 739 S.W.2d 280 (Tex. Crim. App. 1987), cert. denied, 487
U.S. 1228 (1988). However, Castillo is distinguishable from the present case because it involved
a signature crime where the identity of the defendant was based solely on circumstantial evidence. 
Id.; see also Bevers v. State, 811 S.W.2d 657, 661 (Tex. App.--Fort Worth 1991, pet. ref'd)
(holding that, to be admissible, extraneous offense and charged offense must bear unique signature
of one offender where victim did not identify attacker, and identity was established only through
circumstantial evidence). In this case, by contrast, the evidence that appellant possessed drug
paraphernalia was not introduced to identify him as Hinojosa's murderer. The State had direct
eye-witness testimony to identify appellant as the murderer, not merely circumstantial evidence.

 Appellant has conceded that the "Jimmy" seen with Acosta on the night of the
murder is the man who committed the murder. However, appellant implicitly argued at trial that
the State had nothing to connect him with the events of that evening, save the witnesses'
testimony. The evidence of the syringe was introduced merely to corroborate the other testimony
that appellant was the "Jimmy" who had accompanied Acosta and used drugs with her on the night
of the murder. The defense elicited from DelaFuenta that no knife or money was found on
appellant's person. The State obtained the testimony on the syringe in order to correct the false
impression that appellant's examination of DelaFuenta left with the jury: that appellant possessed
nothing which would connect him with the events of the previous evening. The State did not
prompt such testimony or obtain it by maneuvering, and in fact did not seek to introduce evidence
that appellant possessed a syringe until appellant recalled DelaFuenta with the purpose of re-emphasizing the fact that he had no knife or money when arrested. Because the evidence of the
drug paraphernalia was introduced to identify appellant as the man who had accompanied Acosta
the evening of the murder, it is relevant to the offense because it serves to make more probable
an evidentiary fact--that appellant was the man with Acosta--which inferentially leads to an
elemental fact: the identity of the murderer. See Murdock v. State, 840 S.W.2d 558, 566 (Tex.
App.--Texarkana 1992), vacated in part, on other grounds, 845 S.W.2d 915 (Tex. Crim. App.
1993); see also Couret v. State, 792 S.W.2d 106, 107-08 (Tex. Crim. App. 1990) (holding that
extraneous matters pertaining to appellant's arrest that established the context of the offense,
including appellant's acts and possessions, contribute to the jury's comprehension of the whole
criminal transaction, and are thus admissible if relevant to the offense). Acosta testified that she
and "Jimmy" had used cocaine intravenously the night of the murder. The trial court could
reasonably conclude that evidence that appellant possessed a syringe at the time of his arrest made
it more probable that he was the "Jimmy" who accompanied Acosta the evening of Hinojosa's
murder.

 Moreover, any error committed in admitting evidence on the paraphernalia was
negligible. Acosta had previously testified without appellant's objection that she and appellant
had used cocaine intravenously shortly before the murder. Any prejudicial effect created by the
admission of the evidence of the syringe was thus substantially outweighed by the probative value
of the highly relevant evidence. See Tex. R. Crim. Evid. 403. In fact, admitting evidence of the
extraneous offense of drug paraphernalia possession was at most harmless error in light of
appellant's failure to object to Acosta's testimony that she and appellant had used drugs
intravenously on the evening of the murder. Acosta's testimony proved the extraneous offense
independently of the items about which appellant complains. See Bermen v. State, 798 S.W.2d
8, 13 (Tex. App.--Houston [1st Dist.] 1990), pet. dism'd, improvidently granted, sub nom.
Hendricks v. State, 817 S.W.2d 86 (Tex. Crim. App. 1991). 

 We hold that the trial court did not err in admitting evidence that appellant
possessed drug paraphernalia when arrested, or, alternatively, that any error was harmless. We
overrule appellant's fourth point of error.



CONCLUSION


 Because we conclude that the trial court did not err in admitting the identification
testimony of Kenneth Carr, Abigail Acosta, and John Lee Hodges or in admitting evidence that
appellant possessed drug paraphernalia at the time of his arrest, we affirm the trial court's
judgment.



 

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Powers and Aboussie

Affirmed

Filed: February 1, 1995

Do Not Publish

1. The State had the opportunity to develop a reason for Hodges's refusal or inability to
identify appellant at trial. Hodges was arrested for burglary and narcotics possession the day
after Hinojosa's murder. Hodges tried to have these charges dropped by offering to identify
Hinojosa's killer. Whatever bargain there may have been between Hodges and the police
apparently fell through, and Hodges was prosecuted.