TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00174-CR







John Schwartz, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0962404, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING







 A jury found appellant John Schwartz guilty of attempted murder, see Tex. Penal 
Code Ann. §§ 15.01, 19.02 (West 1994), and assessed punishment at imprisonment for twenty
years and a fine of $2,500. In his two issues presented on appeal, appellant contends that the trial
court erred in failing to suppress the in-court identification of appellant by two witnesses, thereby
violating his due process rights. Appellant argues that the witnesses' in-court identifications were
tainted as a result of impermissibly suggestive out-of-court identification procedures which created
a substantial likelihood of mistaken identification. 

 The following evidence pertaining to these issues was developed at a pretrial
hearing on identification and at trial. On September 24, 1995, Vincenzo Faraci stopped at a jeans
recycling stand he owned at the intersection of William Cannon and Emerald Forest in Austin to
check on his employee, Ricardo Soliz. (1) Within ten to fifteen minutes after Faraci's arrival,
appellant and another man drove up in an old Chevy Blazer, walked to the stand, and told Faraci
that they had some jeans to sell. The two men produced twenty-four pairs of new jeans in
different sizes. When Faraci refused to buy the jeans, the two men became belligerent. Faraci
started to walk towards Soliz's mini-van when appellant cut in front of him and shot him in the
chest. Faraci dropped to the ground and tried to crawl under the van. Appellant attempted to
shoot Faraci a second time, but when his gun did not fire, appellant ran back to the Blazer, where
the other man had already retreated, and drove away.

 Later that same afternoon, Soliz went to the police station to make a written
statement. Soliz was shown a computer generated photo array (hereinafter "computer array")
which included a photo of appellant. Soliz was unable to make an identification. Officer Jimmy
Brown testified that another officer recognized the photograph in the computer array as not
representative of appellant's current appearance. Once appellant was in custody, police took two 
photographs of appellant, one with his glasses, and one without. Officer Brown testified that he
was unable to locate enough photographs of persons with glasses for a second array, so he
prepared an array of photographs of persons without glasses, including appellant. Soliz was
shown the second array, and he tentatively identified appellant but stated that the reason he could
not be certain was because the man he saw had been wearing glasses. At that point, Officer
Brown showed Soliz the photograph of appellant with glasses, and upon viewing the photograph,
Soliz positively identified appellant as the shooter. Officer Brown further testified that in
conducting the identification procedure, he showed Soliz each array separately and made no
suggestion that a suspect was included or otherwise directed Soliz to a particular choice.

 Faraci testified at the pretrial hearing that prior to surgery an officer showed him
the same array of photographs Officer Brown showed Soliz. The officer, Vasquez, testified that
while he got a description of the persons involved in the shooting from Faraci at the hospital, he
did not show Faraci any photographs at that time. (2) Faraci further testified that after surgery
another officer, Hudson, showed him the same array of photographs, and at that time he identified
appellant. Approximately two weeks later, Faraci went to the police station, made a written
statement, and again picked out appellant from the photographic array shown to Soliz. His
testimony was consistent that the officer at no time indicated that appellant was included in the
array nor that the officer at any time suggested which individual Faraci should choose. Faraci
testified at trial and positively identified appellant as the man who shot him.

 When analyzing the admissibility of an in-court identification, the reviewing court
uses a two-step analysis: (1) Was the photo display impermissibly suggestive? (2) If it was
suggestive, the court looks to the totality of the circumstances to determine if the suggestive
procedure gave rise to a "very substantial likelihood of irreparable misidentification." Delk v.
State, 855 S.W.2d 700, 706 (Tex. Crim. App.), cert. denied, 510 U.S. 982 (1993). Among the
factors to be considered are (1) the witness's opportunity to view the criminal at the time of the
crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of
the criminal; (4) the witness's level of certainty; (5) the time between the crime and the
confrontation. Id. The burden is on the the defendant to show by clear and convincing evidence
that the in-court identification is unreliable. Id.; see also Harris v. State, 827 S.W.2d 949, 959
(Tex. Crim. App. 1992); Madden v. State, 799 S.W.2d 683, 695 (Tex. Crim. App. 1990), cert.
denied, 111 S. Ct. 1432 (1991).

 Turning to the first step of the analysis, we conclude that the second photographic
array, shown to both Soliz and Faraci, was not impermissibly suggestive. Appellant does not
argue that the array itself was inherently suggestive. Faraci was shown the same photographic
array two (or three) times, and he testified that every time he was shown the array he was able to
positively identify appellant. Thus, the duplicative showing to Faraci was not suggestive.

 Soliz was shown two different photographic arrays. The Texas Court of Criminal
Appeals has stated, however, that "[n]ot every case in which several arrays or displays of a
defendant containing different pictures of a defendant are suggestive." Cantu v. State, 738
S.W.2d 249, 252 (Tex. Crim. App. 1987). Suggestiveness is determined by the circumstances
of the case. See id. In this case, Officer Brown testified that appellant's appearance in the
photograph used in the computer array differed significantly from that used in the second array
and also differed significantly from appellant's current appearance. Officer Brown stated that
appellant's hair was long in the photograph used in the computer array. Therefore, a current
photograph was taken of appellant, who now had short hair, and was added to a second
photographic array. Soliz was able to tentatively identify appellant in the second array. At no
time did Officer Brown suggest which photograph Soliz should choose. 

 Officer Brown also showed Soliz a single photograph of appellant, but only after
Soliz tentatively identified appellant. Soliz testified that he could not be 100 percent sure of his
choice in the second array because the man he saw at the time of the shooting was wearing glasses. 
At that time, Officer Brown showed Soliz a single photograph of appellant with glasses and Soliz 
was able to positively identify appellant as the shooter. Relying on Delk, appellant argues that the
single photograph shown to Soliz was impermissibly suggestive. 855 S.W.2d at 706. However, 
the identification procedures used in this case differ significantly from those used in Delk. In
Delk, the witness was only shown a single photograph of the defendant. It was presented to her
as the person who was in custody and under indictment for the murder of her husband. The court
of criminal appeals concluded that this procedure might have suggested to the witness that police
believed the defendant was the person who killed her husband. See id. In this case, Soliz
tentatively identified appellant from a photographic array prior to being shown a single photograph
of appellant with glasses. We conclude that this procedure was not impermissibly suggestive.

 Even assuming, however, that Soliz's identification was impermissibly suggestive,
we conclude that it did not create a substantial likelihood of irreparable misidentification. Soliz
had a good opportunity to view appellant. Evidence shows that he spent between five and fifteen
minutes talking to appellant, in broad daylight, at a distance of only five to ten feet. He also
testified that he got a good look at appellant's face. Soliz's testimony also revealed that he was
attentive when he saw appellant because he was negotiating a sale with appellant. Soliz provided
police with an accurate description of the shooter. He described the shooter as six feet tall,
wearing a green basketball shirt and sunglasses, and having a burr haircut and goatee. When
appellant, who is five feet eleven inches, was placed in custody he was wearing a green basketball
jersey and had a burr haircut, goatee, and sunglasses. Soliz also demonstrated a high degree of
certainty surrounding his identification of appellant. On all occasions Soliz's testimony was
consistent.

 The shooting occurred on September 24, 1995. Soliz first testified at the pretrial
hearing in April 1996, meaning seven months had passed since Soliz had seen appellant. In light
of the details Soliz was able to recall and the consistency of his testimony, we believe this amount
of time does not detract from his identification of appellant. (3) From the totality of the evidence,
we conclude the trial court could reasonably conclude that Soliz's testimony was reliable despite
any suggestive pretrial procedures. Accordingly, the contentions raised in appellant's two issues
are overruled. 


 The judgment of conviction is affirmed.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and Powers*

Affirmed

Filed: March 18, 1999

Do Not Publish





















* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. In 1995, Faraci, an Italian citizen, ran a business of recycling jeans. He owned three stands
in Austin at which people could sell their new or used jeans for cash. Faraci would then export
the jeans for sale overseas. 
2. On October 28, 1995, Faraci made a statement indicating that prior to surgery an officer
showed him a single picture of appellant. At the pretrial hearing, Faraci disavowed this statement,
testifying instead that he was shown an array of photographs, including a photograph of appellant.
3. Indeed, we note that at the conclusion of the pretrial hearing the trial court found that both
Faraci and Soliz's in-court identifications were based upon their observations of appellant at the
time of the offense.



 It was presented to her
as the person who was in custody and under indictment for the murder of her husband. The court
of criminal appeals concluded that this procedure might have suggested to the witness that police
believed the defendant was the person who killed her husband. See id. In this case, Soliz
tentatively identified appellant from a photographic array prior to being shown a single photograph
of appellant with glasses. We conclude that this procedure was not impermissibly suggestive.

 Even assuming, however, that Soliz's identification was impermissibly suggestive,
we conclude that it did not create a substantial likelihood of irreparable misidentification. Soliz
had a good opportunity to view appellant. Evidence shows that he spent between five and fifteen
minutes talking to appellant, in broad daylight, at a distance of only five to ten feet. He also
testified that he got a good look at appellant's face. Soliz's testimony also revealed that he was
attentive when he saw appellant because he was negotiating a