Socrates WILLIAMS, Appellant,

v.

STATE of Texas, Appellee.

No. 11–95–167–CR.

Court of Appeals of Texas,
Eastland.

Oct. 3, 1996.

John H. Hagler, Dallas, Appellant.

John C. Vance, District Attorney, Sue Koroith, Dallas, Appellee.

Before ARNOT, C.J., and DICKENSON and WRIGHT, JJ.

DICKENSON, Justice.

The jury convicted Socrates Williams of aggravated robbery[1] and assessed his punishment at confinement for life and a $5,000 fine.[2] The trial court cumulated this sentence pursuant to TEX. CODE CRIM.PRO. ANN. art. 42.08 (Vernon Supp.1996), and it will begin when appellant completes the 76–year sentence for aggravated robbery which was imposed in Cause No. F94–01849–MV, 292nd District Court of Dallas County. We affirm.

### Background Facts

On December 28, 1993, Blanca Gonzalez and her employees, Noelle Torres and Maria Marquez, were working at a beauty salon in Irving. Gonzalez arrived at approximately 10:00 a.m., and Torres and Marquez entered a few minutes later. Between 10:15 and 10:30 a.m., a man came to the front door and asked if he could use the telephone. Gonzalez walked out the door and showed him a public telephone. Less than five minutes later, the same man came back with a small black automatic gun which he pointed at Torres.

The man pushed Torres and took her purse; he also asked Marquez and Gonzalez for their purses. Marquez walked to the office to get her purse. The man grabbed Gonzalez, and Torres sat down at one of the hair dryers. Marquez returned from the office with her purse and gave it to the man. Then the man, who was still holding Gonzalez by the arm, ordered her to open the cash register and give him the money that was in the cash register ($50). Then, the man told the three women to get down on the floor with their hands behind their heads.

The women called the police after the man left, and two police cars responded to their call. Officer James Stanley of the Irving Police Department interviewed all three of them, and they described the robber as a light-skinned black man, approximately six feet tall, skinny, wearing a black and green jacket, dark pants, and dark tennis shoes.

Officer Stanley responded to an unrelated police call later that morning, and he saw a man fitting the description which the three women had given of the man who robbed them. The officer stopped his squad car, turned on the lights, began to get out of his car, and said "Hey you" to the man; the man took off running. The officer testified that he got a good look at the man, and he identified appellant in open court as the man who ran. Officer Stanley pursued appellant on foot to an apartment complex which was surrounded by an iron fence. Officer Stanley was approximately 40 yards away when appellant turned sideways and went through a gap in the fence. Officer Stanley pursued appellant into the apartment complex, but he lost sight of appellant in a courtyard.

Canine Officer Vance Flowers was called to bring a dog to assist in the search. Officer Stanley, Officer Flowers, and the dog went back to the opening in the fence so that the dog could pick up the scent. The dog sat down, indicating that it had found something. Officer Flowers looked, and he found a set of keys on the ground.

Officer Stanley's investigation took him to Vicki Williams' apartment; he talked to her and obtained an identification card for her son, Socrates Williams. Officer Stanley showed the card to Investigator Charles C. Cheek of the Irving Police Department and then placed it in the police property room.

---

1. TEX. PENAL CODE ANN. § 29.03 (Vernon 1994) defines the offense and declares it to be a felony of the first degree.

2. TEX. PENAL CODE ANN. § 12.32 (Vernon 1994) provides that a person convicted of a felony of the first degree shall be confined for life or for any term of not more than 99 years nor less than 5 years. An optional fine of not more than $10,000 is also authorized.

Officer Stanley returned to the beauty salon with the keys that he and the dog had found, and Marquez identified the keys. She testified that the last time she saw the keys they were in her purse which was taken in the robbery. Marquez was too nervous to work, and she went home. Torres and Gonzalez worked the rest of the day. After Marquez left, appellant's mother entered the salon and asked Gonzalez for a description of the person who had robbed them.

Gonzalez gave appellant's mother a description of the robber. Appellant's mother left, but she returned about 5:00 p.m. with a family picture of her and her son. Gonzalez and Torres looked at the picture, and both of them recognized appellant as the person who had robbed them earlier that day.

The day after the robbery, Investigator Cheek visited the salon, and Gonzalez told him about the picture which appellant's mother had shown her. Investigator Cheek went to appellant's mother and obtained the photograph. He came back and showed the photograph to Gonzalez, and she positively identified the man in the photograph as the man who robbed her.[3]

### Points of Error

Appellant presents three points of error. In his first point, appellant argues that the evidence is "legally insufficient" to support the conviction. In his second point, he argues that the evidence is "factually insufficient" to support the conviction. In his final point, he claims that the trial court erred in admitting evidence of an extraneous offense during the punishment phase of trial because the State failed to give him notice of its intent to introduce proof of that offense.

### Sufficiency of the Evidence

■■■ To determine if the evidence is "legally sufficient," we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99

S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State,* 820 S.W.2d 154 (Tex.Cr.App.1991). In deciding whether the evidence is "factually sufficient" to support the conviction, we review all of the evidence to determine if the verdict is so against the great weight of the evidence as to be clearly wrong and unjust. *Clewis v. State,* 922 S.W.2d 126 (Tex.Cr.App. 1996).

In connection with the first two points of error, appellant argues that his conviction rests on impermissibly suggestive pretrial identification procedures. We disagree.

■■■ A pretrial identification procedure may be so suggestive and conducive to mistaken identification that the subsequent use of that identification at trial would deny the accused due process of law. *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Barley v. State,* 906 S.W.2d 27 (Tex.Cr.App.1995). A two-step analysis is used to determine the admissibility of an in-court identification: (1) whether the out-of-court identification procedure was impermissibly suggestive and (2) whether that suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Cantu v. State,* 738 S.W.2d 249 (Tex.Cr.App.), *cert. den'd,* 484 U.S. 872, 108 S.Ct. 203, 98 L.Ed.2d 154 (1987). In determining whether there is a likelihood of misidentification, we consider: (1) the opportunity of each witness to view the person at the time of the crime; (2) their degree of attention; (3) the accuracy of any prior description; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the offense and the confrontation. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Delk v. State,* 855 S.W.2d 700, 706 (Tex.Cr.App.), *cert. den'd,* 510 U.S. 982, 114 S.Ct. 481, 126 L.Ed.2d 432 (1993). We examine the totality of the circumstances to determine whether the identification was reliable. *Cantu v. State,* supra.

---

**3.** Investigator Cheek testified that the usual procedure was to show a lineup but that he used the individual photograph since Gonzalez had already seen it when she identified the robber for appellant's mother. Investigator Cheek did not show the picture to Marquez or Torres.

Appellant's argument fails for several reasons. First, Gonzalez had two opportunities to view the person in lighting sufficient to allow her to clearly see his face. Her testimony at trial was that she stood approximately three feet away from him the first time he entered the beauty salon. He asked Gonzalez a question, so her attention was concentrated on him. She walked out with him and directed him to a public telephone. Gonzalez also observed him at close range during the course of the robbery.[4] Following the robbery all three women gave consistent descriptions of the man who robbed them. From these descriptions Officer Stanley, who also identified appellant in open court, recognized appellant and pursued him on foot to the fence where Marquez' keys were recovered. All of these events took place before appellant's mother showed Gonzalez and Torres the picture of her son.

Gonzalez was shown the picture of appellant on two occasions. Both times, she positively identified the man in the picture as the person who had robbed her. Both Gonzalez and Torres were shown the photograph the first time by appellant's mother, not by the police.

Additionally, the in-court identifications by Gonzalez, Torres, and Marquez were based upon their personal observations during the course of the crime. There is nothing in the record to suggest that their identification of appellant was based on the picture shown to them.[5] The mere fact that the victims saw and recognized the perpetrator of the crime from a photograph did not render the victims' in-court identification unreliable. *Harris v. State,* 827 S.W.2d 949, 959 (Tex.Cr. App.), *cert. den'd,* 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992).

Viewing all of the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The first point of error is overruled. Further, in reviewing all the evidence, we find that the verdict was not so against the great weight of the evidence as to be clearly wrong and unjust. Appellant's second point of error is also overruled.

### Evidence of Another Crime

Appellant argues in his third point of error that the trial court erred in admitting evidence of an extraneous offense during the punishment stage of the trial "because the State had failed to give the defense reasonable notice of its 'intent to introduce' such extraneous offense."

TEX. CODE CRIM.PRO.ANN. art. 37.07, § 3(g) (Vernon Supp.1996) provides:

> On timely request of the defendant, notice of intent to introduce evidence under this article [of prior criminal record] shall be given in the same manner required by Rule 404(b), Texas Rules of Criminal Evidence.... *The requirement under this subsection that the attorney representing the state give notice applies only if the defendant makes a timely request to the attorney representing the state for the notice.* (Emphasis added)

TEX.R.CRIM.EVID. 404(b) provides in relevant part that evidence of other crimes may be admissible during the State's "case in chief" for certain purposes if, upon timely request by the accused, "reasonable notice is given in advance of trial" of the State's intent to introduce evidence of other crimes committed by the accused.

On March 30, 1995, appellant's defense attorney filed eleven pretrial motions, including one entitled "Motion to Require Notice of Intent [to] Introduce Evidence of Other Crimes." This motion requested notice under Rule 404(b) of the State's intent to introduce evidence of extraneous crimes in its case in chief. The State did not introduce evidence of the extraneous crime during its case in chief. There was no timely request for "notice of intent" under Article 37.07,

---

4. Marquez and Torres also identified appellant in open court as the robber, and each of them observed him at close range during the robbery. All three were focused on him because they feared for their lives.

5. In fact, Marquez was not present when the picture was shown to Gonzalez and Torres by appellant's mother. Also, Marquez was not present when Investigator Cheek showed the photograph to Gonzalez.

section 3(g) for "notice of intent" to introduce evidence of extraneous offenses during the punishment phase of trial.

The extraneous offense was the robbery of Annette Whitley. Appellant was convicted of that robbery at a prior trial; however, the case was on appeal, and the conviction was not introduced. The State introduced testimony of Whitley, Officer Michael Anthony Hoyt, and Detective Stan McNear. The State also introduced the voluntary statement made by appellant after that robbery and the photographs of the crime scene.

Appellant's attorney in the present case on appeal also represented appellant at his trial for the robbery of Whitley. This is the conviction with which the sentence in this case is cumulated.

The State argues that appellant cannot demonstrate error under Rule 404(b) since appellant was aware of the prior offense, having participated in the trial. However, in *Buchanan v. State*, 911 S.W.2d 11, 15 (Tex. Cr.App.1995), the Texas Court of Criminal Appeals rejected the argument that appellant's actual knowledge of the extraneous offense satisfied the notice requirement of Rule 404(b). *Buchanan* decided the issue of whether the State's "open file" policy was sufficient to comply with the notice of intent to introduce evidence requirements of Rule 404(b). The Court of Criminal Appeals held:

> It is undisputed that appellant made a timely written request for such Rule 404(b) notice.... The plain language of Rule 404(b) requires upon such request that the State give notice "of intent to introduce in [its] case in chief such evidence...." We cannot conclude that the mere opening of its file containing an offense report detailing extraneous evidence satisfies the requirement of giving notice "of intent to introduce" such evidence.

The State also urges that the reference in Rule 404(b) to the State's "case in chief" only concerns evidence relevant to the guilt phase of the trial. Since the extraneous offense evidence was only introduced in the punishment phase, the State argues that its failure to provide notice does not constitute error under *Buchanan*. We agree.

This court recently extended *Buchanan* to a timely request under Article 37.07, section 3(g) for notice of the State's intent to offer proof of extraneous offenses during the punishment phase of trial. See and compare *Dodgen v. State*, 924 S.W.2d 216 (Tex.App.— Eastland 1996, pet'n pending). In the case before us, there was no timely request under Article 37.07, section 3(g) for notice of the State's intent to introduce evidence of extraneous crimes or bad acts during the punishment phase of trial. It seems clear that, if appellant had made a timely request under Article 37.07, section 3(g), the State would have given notice of its intent to introduce proof of that offense. Indeed, the record is clear that, before the jury was selected, appellant asked:

> So if I get time on this case and I'm found guilty it is stacked on to my other time?

> THE COURT: That is a decision that's made entirely by me whether to stack it or run it concurrently.

Appellant's third point of error is overruled.

The judgment of the trial court is affirmed.