No. 04-01-00273-CR



Timothy KIMBROUGH,


Appellant



v.



The STATE of Texas,


Appellee



From the County Court at Law No. Six, Bexar County, Texas


Trial Court No. 774960


Honorable M'Liss Christian, Judge Presiding



Opinion by: Sandee Bryan Marion, Justice


Sitting: Phil Hardberger, Chief Justice

 Paul W. Green, Justice 

 Sandee Bryan Marion, Justice


Delivered and Filed: January 30, 2002 


AFFIRMED

 Appellant, Timothy Kimbrough ("Kimbrough"), was convicted for the misdemeanor offense
of evading arrest. On appeal, Kimbrough challenges his conviction in eight points of error. After
reviewing the relevant law and the evidence in the record, we affirm the trial court's judgment.



Discussion

 A. Constitutional Challenge of the Voir Dire Proceeding

 In Kimbrough's second point of error, he argues that "he was denied his equal protection
under the law and [the] constitutional right to be judged by a jury of his peers, or by a mixed or
neutral jury because he is a black person and [there] [were] no blacks were on the jury." More
specifically, Kimbrough maintains that during voir dire, the State used one of its peremptory strikes
to eliminate the only African American in the jury pool. Kimbrough insists that he objected to the
State's elimination of that venireman, as required by Batson v. Kentucky, 476 U.S. 79 (1986), and
that the State could not provide neutral explanation for challenging that juror. 

 The Equal Protection clause, under the Fourteenth Amendment to the United States
Constitution, prohibits the use of race as a basis for exercising peremptory challenges. Batson v.
Kentucky, 476 U.S. 79, 83-85 (1986). Under Batson, the United States Supreme Court articulated
the requirements for challenging such an unconstitutional use of a peremptory challenge. See id.
First, a defendant must establish a prima face case of purposeful discrimination, which can be done
by only showing that he is a member of a cognizable racial group and that the prosecutor exercised
peremptory challenges to remove the venire members of the his race. Batson, 476 U.S. at 96; see
Harris v. State, 827 S.W.2d 949, 955 (Tex. Crim. App. 1992). If the defendant makes this showing,
the State must rebut the presumption with a race-neutral explanation for challenging the jurors in
question. Harris, 827 S.W.2d at 955. The burden then shifts back to the defendant to impeach or
refute the neutral explanation and show it was merely a pretext for discrimination. Id. 

 Although Kimbrough claims that he properly made a Batson challenge during the voir dire
proceeding, the record does not support his contention. In fact, it appears that the voir dire
proceeding was not even recorded by a court reporter. In order to preserve error on a claim that the
court reporter failed to record certain proceedings, a defendant must lodge an objection with the trial
court. See Williams v. State, 937 S.W.2d 479, 487 (Tex. Crim. App. 1996); Walthall v. State, 594
S.W.2d 74, 81 (Tex. Crim. App. 1980); Wells v. State, 578 S.W.2d 118, 119 (Tex. Crim. App. 1979).
In this case, there is no record that Kimbrough objected to the absence of a court reporter at the voir
dire proceeding; therefore, Kimbrough failed to preserve the error for appeal. Kimbrough's second
point of error is therefore overruled.

 B. Sufficiency of Evidence Challenges

 Kimbrough claims, in his first point of error, that "the evidence was [] insufficient to convict
him because there clearly [was] another reasonable hypothesis besides guilt." In particular,
Kimbrough argues that this court should review the evidence using the "analytical construct" test.
Under that test, when a trial court judgment is based only on circumstantial evidence, an appellate
court reviews the evidence to ensure "that every other reasonable hypothesis raised by the evidence
was negated, save and except that establishing guilt of the defendant." Geesa v. State, 820 S.W.2d
154, 157 (Tex. Crim. App. 1991). Kimbrough's reliance on this standard of review is misplaced. In
Geesa v. State, the Texas Court of Criminal Appeals rejected this test as an appellate method of
review for sufficiency of evidence. Geesa, 820 S.W.2d at 160. Instead, the court found that an
appellate body must conduct either a factual or a legal sufficiency review. When an appellate court
engages in a legal sufficiency review, it views the evidence in the light most favorable to the verdict
and assesses whether any rational trier of fact could have found all the essential elements of the
offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61
L.Ed.2d 560 (1979); Lane v. State, 933 S.W.2d 504, 507 (Tex. Crim. App. 1996). Further, the court
must consider all evidence admitted at trial that supports the verdict, even if improperly admitted.
Garcia v. State, 919 S.W.2d 370, 378 (Tex. Crim. App. 1996); Johnson v. State, 871 S.W.2d 183,
186 (Tex. Crim. App. 1993). This standard of review is applicable both to cases involving direct and
circumstantial evidence. See Green v. State, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992). 

 In addition, appellate courts are "constitutionally empowered to review the judgment of the
trial court to determine the factual sufficiency of the evidence and establish the elements of an
offense." Johnson v. State, 23 S.W.3d 1, 6 (Tex. Crim. App. 2000)(citing Cain v. State, 958 S.W.2d
404, 408 (Tex. Crim. App. 1997). When reviewing a factual sufficiency claim, the court views all
evidence without the prism of "in the light most favorable to the prosecution" and sets aside the
verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. Whitaker v. State, 977 S.W.2d 595, 598 (Tex. Crim. App. 1998) (citing Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996). 

 Although Kimbrough relies on an incorrect standard of review, we nevertheless interpret his
first point of error to be legal and factual sufficiency challenges and will analyze those sufficiency
challenges below. Kimbrough was charged with the offense of evading arrest, and under Texas law,
a person commits this offense if "he intentionally flees from a person he knows is a peace officer
attempting to lawfully arrest or detain him." Tex. Penal Code Ann. § 38.04 (Vernon 1994). To
support the charge against Kimbrough, the State presented the testimony of Officer Andrew Howard.
Officer Howard testified that while on patrol in his car he observed Kimbrough operating his vehicle
without wearing a seatbelt. In addition, Officer Howard noticed that Kimbrough's vehicle did not
have a front license plate and a state registration sticker on the windshield. In response to observing
these traffic violations, Officer Howard turned his car around and activated his overhead lights to pull
Kimbrough over to the side of the road. 

 When Kimbrough noticed Officer Howard, he did not pull over but instead sped away in his
car. Officer Howard then pursued Kimbrough, which resulted in a high speed chase through a
residential neighborhood. Officer Howard testified that, during the course of the chase, Kimbrough
drove recklessly, as he swerved between the lanes on the road and ran several stop signs. Eventually,
Kimbrough lost control of his car, driving it into a curb, which caused damage to his tire.
Kimbrough, however, did not surrender at that point in time, and instead, abandoned his car and fled
on foot. In an attempt to get away, Kimbrough apparently jumped over a chain linked fence, ran
across an access road along side Interstate 10 (I-10), jumped a highway barricade, and crossed the
interstate. After chasing him for some time, Officer Howard caught Kimbrough and arrested him.
Based on this testimony, we find that the jury could have found, beyond a reasonable doubt, all of the
elements necessary to convict Kimbrough for evading arrest. Accordingly, we overrule his legal
sufficiency challenge.

 Kimbrough, however, relies primarily on the testimony of Diane Williams and on his own
testimony in making his factual sufficiency challenge. Williams, who was the owner of the car, was
the first witness to testify. Williams stated that she brought her car to the mechanic because the
brakes and the accelerator needed repair. After Williams testified, Kimbrough told the jury that he
saw two women tow their car to the mechanic shop near his karate studio. Kimbrough apparently
approached the young women and made an agreement with them to repair the car. After he worked
on the car, he was able to operate it and take it for a test drive. As he was returning from the test
drive, Officer Howard attempted to pull him over. Kimbrough testified that because the car had out-of-state license plates and no insurance, he panicked and decided not to obey the officer's request to
stop. Furthermore, he told the jury that it was also at that time that he realized the brakes were not
working. Kimbrough then remembered the owner had told him that when she had trouble with the
accelerator and brakes, she pumped the gas and then the brakes to get the car to stop. However,
when Kimbrough attempted to do so, the car only accelerated, and so he was forced to swerve the
car to slow it down. According to Kimbrough, this also was futile because he was traveling on a
road with hills and could not control his speed.

 Eventually, Kimbrough slowed the car down enough to hit the curb and bring it to a stop.
Officer Howard, who had been pursuing Kimbrough, apparently pulled up behind Kimbrough's car
and bumped the car with his bumper. Kimbrough then got out of the car and noticed Officer Howard
running towards him. Kimbrough stated that because Officer Howard was large in stature, he got
scared and started to "run for [his] life." Kimbrough testified that he only reacted in that manner
because he was afraid and not because he wanted to evade Officer Howard. 

 In this instance, we find that the jury, whose job is to assess weight of the testimony and the
credibility of the witnesses, could have disbelieved Kimbrough's version of the events surrounding
his arrest. Mosley v. State, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998); Chambers v. State, 805
S.W.2d 459, 461 (Tex. Crim. App. 1991). We hold, therefore, that because there is factually
sufficient evidence to support the jury's verdict, it is not so contrary to the overwhelming weight of
the evidence as to be clearly wrong and unjust. Kimbrough's first point of error is overruled.

 C. Challenge of the Constitutionality of the Traffic Stop 

 Kimbrough also contends, in his third and fourth points of error, that "the State failed to
establish, and prove the lawfulness of the stop," which is a required element for showing evasion of
arrest under section 38.04 of the Texas Penal Code. Tex. Penal Code Ann. § 38.04. We find that
although Kimbrough argues that the State failed to establish lawfulness of a traffic stop under 38.04
of the Texas Penal Code, no such requirement is listed in that section. However, we do note that
both the Texas and United States Constitutions, demand that a law enforcement officer lawfully
effectuate a traffic stop. See U.S. Const. amend IV; see Tex. Const. art. I, § 9. Further, we
recognize that Kimbrough is proceeding on appeal pro se, and so we interpret his third and fourth
points of error as constitutional challenges. 

 It is well-settled that a routine traffic stop is a detention and must be reasonable under the
United States and Texas Constitutions. Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App.
1997). A reasonable traffic stop is one that is temporary and lasts no longer than what necessary to
accomplish the purpose of the stop. Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75
L.Ed.2d 229 (1983); Davis, 947 S.W.2d at 245. "[T]he reasonableness of a temporary detention
must be examined in terms of the totality of the circumstances and will be justified when the detaining
officer has specific articulable facts, which taken together with rational inferences from those facts,
lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal
activity." Woods v. State, 956 S.W.2d 33, 38-39 (Tex. Crim. App. 1997); Davis, 947 S.W.2d at 244-45. Further, the burden is on the State to demonstrate the reasonableness of the stop. See Tex. Dep't
of Pub. Safety v. Chang, 994 S.W.2d 875, 877 (Tex. App.-Austin 1999, no pet.). If an officer has
a reasonable basis for suspecting that a person has committed a traffic offense, the officer may legally
initiate a traffic stop. McVickers v. State, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993). However,
the State does not have to establish that a traffic violation occurred, but only that the officer
reasonably believed a violation was in progress. Valencia v. State, 820 S.W.2d 397, 400 (Tex.
App.-Houston [14th Dist.] 1991, writ ref'd). 

 Here, we find that Kimbrough's constitutional claims are without merit. Kimbrough
complains that he was unlawfully stopped by Officer Howard; however, section 545.413 of the
Transportation Code provides that a person violates Texas law if he operates a vehicle without
wearing a seatbelt. Tex. Transp. Code Ann. § 545.413 (Vernon 1999). In addition, section
502.404 of the Texas Transportation Code prohibits a person from operating a vehicle without license
plates. Tex. Transp. Code Ann. § 502.404 (Vernon 1999). Finally, in Texas, it is also a violation
to operate a motor vehicle that has not been registered with the state. Tex. Transp. Code Ann. §
502.402 (Vernon 1999). The record reveals that in this instance Officer Howard observed that
Kimbrough was driving a vehicle without wearing a seatbelt and that the vehicle lacked a registration
sticker on the windshield and a license plate on the front of the vehicle. Based on these observations,
Officer Howard decided to pull Kimbrough over. The record also shows that when Officer Howard
attempted to stop Kimbrough, Kimbrough tried to escape both in his vehicle and on foot. It was only
after this pursuit that Officer Howard detained Kimbrough and charged him with evading arrest. We
hold, therefore, that based on the record, Officer Howard's detention of Kimbrough was reasonable. 
Kimbrough's third and fourth points of error are overruled.

 D. Improper Admission of Evidence Regarding Prior Bad Acts

 In his seventh point of error, Kimbrough argues that "he did not receive a fair and impartial
trial because the trial court erred by admitting for impeachment purposes evidence of [his] prior
convictions [which][were] more than ten years old." More specifically, Kimbrough complains that
the court erroneously admitted evidence of a misdemeanor shoplifting charge from 1989, a
misdemeanor possession of marijuana charge from 1988, and a misdemeanor "unlawful gun
carry[ing]... charge from 1989." Similarly, Kimbrough contends in his eighth issue on appeal that the
trial court wrongfully admitted evidence "of a felony case that was dismissed thirteen years ago." 

 After reviewing the record, we do not find evidence matching the exact prior criminal acts
which Kimbrough complains about on appeal. However, the record does show that on cross-examination the State was able to elicit the following testimony from Kimbrough:

 Q: [The State] What were you seeing a probation officer for?

 A: [Kimbrough] I was on parole.

 Q: What were you on parole for?

 A: For something I did maybe nine, ten years ago.

 Q: What did you do nine or ten years ago?

 ***

 A: I had a possession of cocaine case.

 Q: Okay. And did you have a warrant when you were running from that police
officer?

 ***

 A: Yes, I did.

 ***

 Q: What happened to - prior to 1993, Mr. Kimbrough?

 A: I got arrested for, I got caught for shoplifting. I got arrested for - I got convicted
of shoplifting. I got arrested for possession of drugs. I told you that. That's what
happened prior. 

 ***

 Q: That's all you remember. You don't remember possession of marijuana?

 A: Possession of that - yeah, I would say possession of drugs.

 Q: How about theft?

 A: Shoplifting, that's the theft.

 Q: How about another theft.

 A: Never been convicted of no kind of theft.

 ***

 Although it is possible that the State's questions regarding Kimbrough's criminal history
might have been objectionable, Kimbrough never objected to these questions nor did he refuse to
answer them. It is a well-settled principle that to preserve error for review on appeal, a defendant
must object timely, specifically, and receive an adverse ruling at trial. Tex. R. App. P. 33.1 (a);
Turner v. State, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991); Solis v. State, 945 S.W.2d 300, 301
(Tex. App.-Houston [1st Dist.] 1997, writ ref'd). Because Kimbrough did not make an objection
during trial, he failed to preserve any error for this court to review. Accordingly, we overrule
Kimbrough's seventh and eighth points of error.

 E. Improper Jury Argument

 Kimbrough maintains, in his sixth point of error, that "he did not receive a fair trial because
the State misdirected the jury about reasonable doubt in the argument when the prosecutor stated 'the
dictionary does not define reasonable doubt.'" However, after a close review of the State's closing
argument, we find no mention of the statement of which Kimbrough complains. Further, even if the
State had made any improper argument during its closing remarks, there is no evidence in the record
that Kimbrough lodged any objection. Under Texas law, to "preserve [an][improper] jury argument
for appellate review, a defense counsel must '(1) make an objection; (2) request an instruction to
disregard; and (3) make a motion for a mistrial.'" Cook v. State, 858 S.W.2d 467, 473 (Tex. Crim.
App. 1993) (citing Coe v. State, 683 S.W.2d 431, 436 (Tex. Crim. App. 1984)). In addition, before
an appellant can complain about an improper jury argument on appeal, he has a duty to press the trial
court for a ruling. Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (holding that a
defendant's failure to object to a jury argument or a defendant's failure to pursue an adverse ruling
on his objection forfeits his right to complain on appeal). Because Kimbrough failed to preserve any
error for review, his sixth point of error is overruled. 



 F. Defective Jury Charge

 Finally, Kimbrough asserts, in his fifth point of error, that "the jury charge used to obtain his
conviction was so defective that this cause must be automatically reversed, because this charge failed
to give the definitional instruction on reasonable doubt." Kimbrough also complains that the jury
charge was defective because it instructed the jury that "it is not required that the prosecution prove
guilt beyond a reasonable doubt." 

 First, we find that Kimbrough's complaint that the charge contained an instruction stating that
the prosecution need not prove their case "beyond a reasonable doubt" is unfounded. After carefully
reviewing the jury charge, we have not found such a statement. In fact, the charge states as follows:

 Now, if you find from the evidence beyond a reasonable doubt that on or about the
29th day of December, 2000, in Bexar County, Texas, the defendant, Timothy
Kimbrough, did then and there intentionally flee from a person, namely: A. Howard,
hereinafter called complainant, that the defendant knew the said complainant was a
peace officer attempting to detain the said defendant, and that the said detention was
lawful, then you will find the defendant guilty as charged. 

 

 Unless you find beyond a reasonable doubt, or if you have a reasonable doubt thereof,
you will find the defendant not guilty.

Further, Kimbrough's argument that the jury charge must contain a definition of "reasonable doubt"
is also misplaced. The Texas Court of Criminal Appeals, in Paulson v. State, specifically overruled
its holding in Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991), which required a trial court
to instruct a jury on the definition of reasonable doubt. Paulson v. State, 28 S.W.3d 570, 573 (Tex.
Crim. App. 2000). In fact, in Paulson, the court held that "the better practice is to give no definition
of reasonable doubt at all to the jury;" however, "i]f both the State and the defense were to agree to
give a Geesa instruction to the jury, it would not constitute reversible error for the trial court to
acquiesce to their agreement." Id. at 573. Based on this precedent, no error was committed when
the definition was omitted from the charge. Kimbrough's fifth point of error is overruled.

Conclusion

 After reviewing Kimbrough's complaints, the accompanying record, and the relevant law, we
overrule his eight points of error and affirm the trial court's judgment. 


 Sandee Bryan Marion, Justice


DO NOT PUBLISH