ACCEPTED
07-14-00345-CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
3/10/2015 2:33:19 PM
Vivian Long, Clerk

IN THE COURT OF APPEALS
IN AND FOR THE SEVENTH DISTRICT OF TEXAS

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
3/10/2015 2:33:19 PM
VIVIAN LONG
CLERK

| | | |
|---|---|---|
| MARC ALLEN MASON | X | |
| | X | |
| VS. | X | CAUSE NO. 07-14-00345-CR |
| | X | |
| THE STATE OF TEXAS | X | |

APPEAL FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY

APPELLANT'S BRIEF

ERIC COATS
SBN 00783845
1716 S. POLK
AMARILLO, TX. 79102
806-374-1333
806-373-7773

COUNSEL FOR APPELLANT

ORAL ARGUMENT REQUESTED

<u>IDENTITIES OF PARTIES AND COUNSEL</u>

The following is a complete list of all the parties, as well as the names and addresses of all counsel:

Appellant:

Counsel for Appellant:
Mr. Eric Coats
SBN: 00783845
1716 S. Polk
Amarillo, TX. 79102

Trial Counsel for Appellant:

:

MR. DONALD F. SCHOFIELD
SBOT NO. 17800500
112 West 8th Street, Suite 530
Amarillo, Texas 79101
(806) 373-0030

Trial Counsel for the State:

Mr. Charles David Blount
Asst. Randall County District Attorney
SBOT NO. 24086495
Mr. Warren L. Clark
Asst. Randall County District Attorney
SBOT No. 04300500
Randall County District Attorney
2309 Russell Long Blvd.
Canyon, Texas 79015
(806) 468-5570

## TABLE OF CONTENTS

IDENTITY OF PARTIES                              2

TABLE OF CONTENTS                                3

INDEX OF AUTHORITIES                             4

STATEMENT OF THE CASE                            6

ISSUES PRESENTED                                 6

STATEMENT OF FACTS                               7

SUMMARY OF ARGUMENTS                             12

ARGUMENTS                                        12

PRAYER                                           28

CERTIFICATE OF COMPLIANCE                        29

CERTIFICATE OF SERVICE                           29

# INDEX OF AUTHORITIES

## STATUTES

United States Constitution Amendment XI      13, 20

Texas Code of Criminal Procedure Article 46B.003      25, 29

Texas Code of Criminal Procedure Article 46B.004      25, 29

Texas Code of Criminal Procedure Article 46B.005      26, 29

Texas Code of Criminal Procedure Article 46B.024      25, 29

## CASE LAW

*Barker v. Wingo*, 407 U.S. 514 (1972)      14, 15, 16, 19, 22

*Cantu v. State*, 253 S.W.3d 273 (Tex.Crim.App. 2008)      20, 21, 23

*Cooper v. Oklahoma*, 517 U.S. 348 (1996)      26, 28

*Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)      15

*Dragoo v. State*, 96 S.W.3d 308 (Tex.Crim.App. 2003)      16

*Druery v. State*, 412 S.W.3d 523 (Tex.Crim.App. 2013)      27

*Ex parte LaHood*, 401 S.W.3d 45 (Tex.Crim.App. 2013)      27, 28

*Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App. 1997)      15

*Johnson v. State*, 954 S.W.2d 770, 771 (Tex.Crim.App. 1997)      16

*Kelly v. State*, 163 S.W.3d 722 (Tex.Crim.App. 2005)    15

*Kloper v. North Carolina*, 386 U.S. 213 (1967)    14

*Harris v. State*, 827 S.W.2d 949 (Tex.Crim.App. 1992)    15, 16

*Phillips v. State*, 650 S.W.2d 396 (Tex.Crim.App. 1983)    19

*Pierson v. State*, 426 S.W.3d 763 (Tex.Crim.App. 2014)    16

*Turner v. State*, 422 S.W.3d 676 (Tex.Crim.App. 2014)    27

*State v. Munoz*, 991 S.W.2d 818 (Tex.Crim.App. 1999)    15

## STATEMENT OF THE CASE

Appellant was charged by indictment in Cause No. 23,957-C in the 251ST District Court in and for Randall County with burglary of a building alleged to have occurred on or about the 20th day of November, 2012. (C.R. 6). Appellant's case was tried to a jury. (R.R. : IV). The jury found Appellant guilty. (R.R. IV : 159). The jury found both enhancement paragraphs in the indictment true, then set punishment at seventeen years in prison and fined Appellant $5,000. (R.R. V : 174). The trial court pronounced sentence in accordance with the verdict of the jury. (R.R. V : 176). Appellant timely filed a notice of appeal. (C.R. 150).

## ISSUES PRESENTED

I. Appellant's right to a speedy trial was violated by his almost twenty-two month period of incarceration prior to trial.

II. The trial court had a duty to stay all proceedings in Appellant's case until the issue of Appellant's competency was addressed.

## STATEMENT OF FACTS

Appellant was arrested on November 20, 2012. (R..R. II : 27). A complaint was filed alleging burglary of a building on November 29, 2012. (C.R. 100). Prior

6

to March of 2013, Appellant was placed in a solitary confinement in a six foot by 10 foot cell with no lights. (R.R. II : 28-29). Appellant was indicted for burglary of a building on March 20, 2013. (C.R. 6). Appellant was appointed counsel, Greg Phifer, on March 25, 2013. (C.R. 9). Greg Phifer visited Appellant on one occasion in March of 2013 at which time Appellant instructed Greg Phifer to get ready for trial, requested that motions be filed, gave him a list of witnesses and informed him of the conditions of his detention. (R.R. II : 31-32). Appellant requested that Greg Phifer file a motion for a speedy trial. (R.R. II : 49). On April 19, 2013, the trial court ordered a psychiatric examination of Appellant without motion from Appellant or the State. (C.R. 10).[1] The examination was to be completed on June 6, 2013. (C.R. 13). Appellant was not transported by the Randall County Sheriff's Office for this examination. (R.R. II : 13). Ten months subsequent to its initial order, the trial court ordered a second psychiatric examination of Appellant to be conducted on March 21, 2014, again without a request for such examination having been filed by Appellant or the State. (C.R. 15-19). Appellant was transported to this appointment, but refused to participate

---

[1]There is no reference in the record that indicates why Judge Abe Lopez, who was sitting by assignment, determined that Appellant needed to be evaluated for competency and sanity. The order said that it was pursuant to Articles 46.02 & 46.03 of the Code of Criminal Procedure. Those Articles were repealed in 2004 and 2005.

in the examination because he had not been told about the appointment, did not know who had requested it, and was not prepared for the exam due to being held in a darkened cell for over a year. (R.R. II : 47; C.R. 36). Fourteen months after his initial arrest, Appellant began filing pro se motions. (C.R. 15, 20)[2]. Appellant's first motion informed the trial court that he had been neglected by appointed counsel, Greg Phifer, and wished to represent himself. (C.R. 20-23). This motion also stated that Appellant's Constitutional rights were being violated and specifically listed his rights under the Sixth Amendment to the United States Constitution. (C.R. 20). Appellant's second motion requested that his head be scanned in order that a wireless audio device implanted in his sinus cavity might be detected. (C.R. 24-26).

On May 19, 2014 appointed counsel, Greg Phifer, filed a motion to withdraw as counsel; this is the only document filed by Greg Phifer in his fourteen months on the case. (C.R. 27). On the same day, the trial court allowed Greg Phifer to withdraw, and appointed Don Schofield as counsel for Appellant. (C.R. 29, 10). On June 2, 2014 counsel, Don Schofield, file a motion to have Appellant evaluated by a psychiatrist to determine if he was competent. (C.R. 66). The trial court granted this motion and ordered that Appellant be examined by Dr. Mustafa

---

[2]It would be logical to conclude that Appellant was provided with light around this time.

Hussein on August 14, 2014. (C.R. 77). Dr. Mustafa Hussein declined to conduct an examination because Appellant told Dr. Hussein that Donald Schofield was not his lawyer. (C.R. 92). On September 2, 2014 Appellant through counsel filed a motion to dismiss for lack of a speedy trial. (C.R. 98).[3] Appellant's trial began on September 15, 2014. (R.R. II).

The trial court held a hearing on Appellants motion to dismiss for lack of a speedy trial immediately prior to the commencement of his trial. (R.R. II :24-57). At the hearing, Appellant established that he had been in custody in the Randall County Jail from November 20, 2012 to September 15, 2014. (R.R. II : 27). Appellant was housed in the administrative segregation unit, and allowed out of his cell for three hours per week. (R.R. II : 27-28). The lighting was taken out of Appellant's cell for over a year prior to March 22, 2014. (R.R. II : 29). Appellant described his cell as "pitch black". (R.R. II : 29). During this time, Appellant was denied access to the law library. (R.R. II : 33-34). Appellant was unable to read or write while housed in the dark cell. (R.R. II : 30). Appellant was unable to contact his attorney during this time. (R.R. II : 30). After Donald Schofield was

---

[3]It appears from the record that Appellant wrote a letter to the prosecutor that may have been an earlier request for a speedy trial, but that letter was not made part of the record and was not addressed to the trial court. State's Counsel acknowledged receipt of the letter. (R.R. II : 22-23).

9

appointed, it was discovered that two of Appellant's witnesses had become unavailable during his incarceration, Rose Grubbs and Danielle Sandoval. (R.R. II : 35). Rose Grubbs had moved over 500 miles away, and Danielle Sandoval had lost her memory. (R.R. II : 35-36). These were witnesses that Appellant believed were material to his case as they could testify to his mental state near the time of the allegation. (R.R. II 36). Appellant never authorized either of his lawyers to ask for a continuance in the case, and neither attorney did. (R.R. II : 37; C.R.).

The State did not dispute the length of Appellant's incarceration or dispute the conditions Appellant described. (R.R. II : 38-44). The State, through cross examination of Appellant, established that Appellant was treated differently from other inmates by the Randall County Sheriff because he had previously formed a relationship with a Randall County Jailer, he had tried to break up a fight between other inmates and he had been accused of damaging property. (R.R. II : 41-42). The State said that it was not at fault for the nine month delay in getting Appellant to Dr. Schneider for an examination. (R.R. II : 55). The State argued that the case was not tried in a timely manner because of the psychiatric examination motions filed by the defense. (R.R. II : 55). The case was uncomplicated; the State's evidence in the guilt innocence portion of the trial was presented in approximately two hours. (C.R. 162).

10

The issue of the defendant's mental health was brought to the attention of the trial court many times prior to trial. (C.R.; R.R. II). Trial counsel, on two occasions expressed concerns about Appellant's competency to stand trial by motion. (C.R. 66; R.R. II : 13) The trial court signed three orders for psychiatric testing of Appellant. (C.R. 10, 15, 74). During the pre-trial hearing, trial counsel re-urged his motion for a competency examination. (R.R. II : 12). Counsel asked the trial court to take judicial notice of Appellant's filings in which he referred to an audio device implanted in his head. (R.R. II : 13). Appellant filed pro se motions which indicated his belief that he had an audio device implanted in his head. (C.R. 20, 79). Appellant discussed this belief with the trial court. (R.R. II : 15, 19). Appellant testified that he had been diagnosed with a mental disease. (R.R. II : 107). Appellant testified that he was "mentally incapable of thought" at the time of the offense due to his depression and the implant he believed he had in his head. (R.R. II : 109-112). Deputy Doak testified that he had conducted a wellness check on Appellant when he found Appellant walking along a highway at night on November 19, 2012, the evening prior to the incident. (R.R. II : 104). The trial court denied trial counsel's re-urged motion, and made no inquiry into Appellant's incompetence. (R.R. II : 13).

## SUMMARY OF THE ARGUMENTS

I.  Appellant was denied a speedy trial.  He was incarcerated for one year, nine months and fifteen days prior to trial, mainly in dark solitary confinement.  During this delay, two of his witnesses became unavailable.  Appellant never requested a continuance.  The State blamed the delay on the need for a psychiatric examination of Appellant, but did not object to trying Appellant in the absence of such an examination.

II.  The trial court was required to hold an informal inquiry to determine whether there was some evidence that would support a finding that Appellant was incompetent.  Evidence from many sources raised the issue of Appellant's incompetency.   The trial court proceeded to trial on the merits without addressing the issue of Appellant's incompetency; the proceedings were not stayed as required by law.

## ARGUMENTS

### I. Speedy Trial

#### The Facts

Appellant was incarcerated for one year, nine months and fifteen days prior to his trial.  Appellant was incarcerated for four months prior to his indictment, he

did not have counsel during that time. After indictment, Appellant was appointed counsel and told counsel to prepare for trial, obtain discovery, to request a speedy trial, and not to ask for a continuance. Appellant was ordered to undergo a psychiatric examination thirty days after he was indicted, apparently by the court acting sua sponte. Appellant was incarcerated for a year after indictment, with most of that time spent in darkened solitary confinement. One year and one day after indictment, Appellant was taken from his dark cell for a psychiatric examination, which he refused. Upon being provided light, Appellant filed a motion with the court primarily complaining of his lawyer's neglect, but in which he also stated that his Sixth Amendment rights were being violated. Appellant claims to have made a request for a speedy trial to State's counsel that does not appear in the record, and this claim was corroborated by counsel for the State. However, the motion for speedy trial filed by trial counsel fifteen months after indictment sought dismissal instead of a speedy trial. Appellant's case was tried 13 days after his speedy trial motion was filed. The motion was denied immediately prior to trial.

The State did not dispute the conditions of Appellant's confinement. The State attributed the delay in Appellant's trial to the defense filing motions for a psychiatric examination, but a year of the delay was caused by the Randall County

13

Sheriff's Department failure to transport Appellant to his appointment, and the failure of the trial court, the State, or the defense to uncover that failure for eight months. Undoubtedly, Appellant's initial trial counsel did not help Appellant bring his case to trial.

The Law

The Sixth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, guarantees a speedy trial to an accused. See U.S. Const. amend VI; *see Kloper v. North Carolina*, 386 U.S. 213 (1967). In addressing a speedy-trial claim, the Supreme Court has laid out four factors that a court should consider: (1) the length of delay, (2) the State's reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant because of the length of delay. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972). The accused must first make a threshold showing that " the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *See Doggett*, 505 U.S. at 651-52. The Texas Court of Criminal Appeals has reiterated that " presumptive prejudice" " simply marks the point at which courts deem the delay unreasonable enough to trigger enquiry." *State v. Munoz*, 991 S.W.2d 818, 821-22 (Tex.Crim.App. 1999) (quoting *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)); *see Harris v.*

14

*State*, 827 S.W.2d 949, 956 (Tex.Crim.App. 1992) (assuming that a 13-month delay was prima facie unreasonable under the circumstances). Thus, if the State prosecuted the accused with " customary promptness," the accused has failed to meet the threshold burden, but if the defendant can make a threshold showing of presumptive prejudice, a court must then proceed to consider each of the remaining *Barker* factors and weigh them. *Munoz*, 991 S.W.2d 818 at 821-22.

When reviewing an application of the Barker test, a reviewing court uses the same burden of proof allocation as in the context of a motion to suppress. See *Kelly v. State*, 163 S.W.3d 722, 726 (Tex.Crim.App. 2005). Almost total deference is given to historical findings of fact of the trial court that the record supports and reasonable inferences from those facts necessary to support the trial court's findings are drawn, but de novo review is applied to whether there was sufficient presumptive prejudice to proceed to a *Barker* analysis and the weighing of the *Barker* factors, which are legal questions. *Id.; see Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997); *Johnson v. State*, 954 S.W.2d 770, 771 (Tex.Crim.App. 1997). In addition, a reviewing court should not consider in its deliberations record evidence that was not before the trial court when it made its ruling. *See Dragoo v. State*, 96 S.W.3d 308, 313 (Tex.Crim.App. 2003); see also *Pierson v. State*, 426 S.W.3d 763, 771 (Tex.Crim.App. 2014).

1. Length of Delay

The period of incarceration was sufficiently long to trigger application of the *Barker* analysis. Appellant was incarcerated awaiting trial for more that twenty one months. Even when the four month period of pre-indictment incarceration is excluded, Appellant was incarcerated for almost eighteen months after indictment. This period of incarceration prior to trial was prejudicial. *See Harris v. State*, 827 S.W.2d 949 (Tex.Crim.App. 1992) (where a thirteen month period between arrest and trial was deemed sufficient to trigger a *Barker* analysis).

2. State's Reason For Delay

The State argued that the delay was caused by the defense filing motions seeking to have Appellant undergo a psychiatric examination. This excuse is partially untrue, and wholly inadequate. First, two of the orders for psychiatric examination issued by the court were not issued pursuant to motions filed by the defense. These orders were issued by the court without a motion from the defense or the State. Second, these orders do not justify the length of the delay in the absence of negligence. The first order was for the defendant to submit to a psychiatric examination on June 6, 2013. Article 46B.026 required that a report from that examination be filed within thirty days of that date. When Appellant

16

was not transported to that appointment by the Sheriff, and no report was received by the Court by July 6, 2013, it should not have taken until February 21, 2014 to discover that failure. That seven month delay cannot be attributed to anything but negligence.[4] Appellant was next ordered for examination to occur on March 21, 2014. Appellant was transported to this appointment, but would not cooperate. The trial court attempted to alert all parties to this development on April 1, 2014, but failed to notify newly appointed counsel for Appellant. (C.R. 39-41). Defense counsel became aware of this development and filed a new motion for psychiatric examination on June 2, 2014. The trial court ordered that Appellant be examined August 14, 2014. The psychiatrist did not follow the order of the trial court and failed to conduct this examination. Appellant's trial counsel re-urged this motion on September 2, 2014. This motion was denied by the trial court just prior to trial.

However, the main reason that this explanation is unsatisfactory is that it does not comport with the actions finally taken by the State and the trial court. The State argued that it could not set the case for trial because a psychiatric exam was pending at all times. However, nothing in the record indicates that the trial

---

[4]Although for legal analysis, the State is held liable for this omission, the State was not alone in this act of negligence. The Randall County Sheriff's Department, as admitted by counsel for the State, treated Appellant differently than other inmates and failed to transport Appellant for reasons that are not stated in the record. Clearly, the trial court lost track of the case. Appellant was effectively without the assistance of counsel during this period as well.

could not be set for hearing as early as July of 2013. Appellant's initial exam was to be conducted on June 6, 2013. Normal procedure would be to have a hearing after that examination was conducted. The examination was not conducted and that fact was not discovered for over seven months. There is nothing in the record that excuses the State for this period of inaction. Additionally, when the second examination was not conducted on March 21, 2014, the State had notice of that event on April 1, 2014. Nothing in the record indicates that any hearing was had or that notice was given to appropriate defense counsel subsequent to this failed examination until counsel filed his motion for psychiatric examination on June 2, 2014. The trial court denied Appellant's motion to dismiss for violation of his right to speedy trial stating, "because the record reflects that that was something was pending at all times." (C.R. 57). This is not true specifically for the periods between March 21, 2013 to February 21, 2014 and June 6, 3014 to September 2, 2014. The defense actually had motions for a psychiatric examination pending almost continuously in this case only from June 2, 2014 to the date of trial. Despite those pending motions, the case was set for trial on September 15, 2014. The pending motions were not an impediment to the State obtaining a trial setting. It should also be considered that the State voiced no objection to trial of the case in the absence of a psychiatric evaluation. When trial counsel for Appellant

18

voiced his concerns relating to Appellant's delusional thinking and urged the trial court to have a psychiatric examination completed, the State stood mute as the motion was denied. The State should not be allowed to argue that it was prevented from bringing the case to trial in the absence of a psychiatric examination when it achieved exactly that result. Although these periods of neglect cannot be laid entirely at the feet of State's counsel and do not appear to be the product of any malice, such failures are weighed against the State. *See Barker id. 40*7 U.S at 532.

### 3. Defendant's Assertion of the Right to Speedy Trial

Although a defendant's failure to assert his speedy trial right does not amount to a waiver of that right, failure to assert the right makes it difficult to prove denial of a speedy trial. *Barker*, 407 U.S. at 532. It has been held that a defendant's motivation in seeking dismissal rather than a speedy trial may be weighed against him. *Phillips v. State*, 650 S.W.2d 396 at 401 (Tex.Crim.App. 1983). If a defendant fails to first seek a speedy trial before seeking dismissal of the charges, he should provide cogent reasons for this failure. Repeated requests for a speedy trial weigh heavily in favor of the defendant, while the failure to make such requests supports an inference that the defendant does not really want a trial, he wants only a dismissal. *Cantu v. State*, 253 S.W.3d 273, 283 (Tex.Crim.App. 2008).

Appellant's first specific assertion of his right to a speedy trial was the filing of a motion to dismiss for denial of speedy trial filed thirteen days prior to his trial. However, on at least two other occasions, Appellant asserted this right. Appellant was prevented from asserting any right for the first year after he was indicted by the conditions of his incarceration. When Appellant was provided light in his cell, he began filing motions with the trial court. In his first motion, Appellant informed the trial court that he had been neglected by his appointed counsel and that his Sixth Amendment rights were being violated.[5] It must be admitted that this is not the specific motion for speedy trial normally recognized by the court. However, given Appellant's abilities and mental state as exhibited by his motions, this was a reasonable attempt for this specific defendant. Appellant also claims to have written a letter to counsel for the State in which he requested a speedy trial. State's counsel remembered receiving such a letter, but did not specifically affirm or deny its contents.

Under the circumstances, it would be unfair to punish Appellant for not specifically asserting his rights when the State held him in a condition that forced his silence and his own attorney did not speak for him. The motions filed by

---

[5]Appellant asserted that his 5th, 9th and 14th Amendment rights were also being violated in the same motion.

Appellant evidence his desire to prepare for trial. Trial counsel informed the trial court that Appellant had instructed his attorneys to prepare for trial and not to file any continuances. No delay was sought by the defense. The record indicates that Appellant sought a trial at every point when he was able to do so, in the manner he was capable. There is nothing in the record to indicate that Appellant was operating under the theory, "Never tried, never convicted". *See Cantu id.* at 283.

### 4. Prejudice

Appellant was prejudiced by the delay. Appellant was incarcerated for four months before being formally charged or speaking to a lawyer. He was placed in darkened isolation and denied contact with anyone but his lawyer for a year; unfortunately, his lawyer did not contact him during that time. Understandably, Appellant testified that the situation caused him distress. The motions Appellant filed when he emerged from the darkness indicate this distress, and raise concerns about his mental health.[6] The State did not dispute the conditions of Appellant's incarceration. The State merely sought to explain why the Sheriff's Department treated Appellant differently than other inmates.

In addition to the prejudice suffered by Appellant as a result of his

---

[6]Appellant testified that after fourteen months, he was moved from his dark cell into a cell where an inmate had recently committed suicide in furtherance of his torture. (R.R. II : 42-43).

incarceration under troubling conditions, is the damage done to his defense by the delay. Appellant testified that he was dysfunctional and incapable of thought at the time of his accusation. (C.R. 108, 112). Two of his witnesses that could have testified to his then existing mental state became unavailable during his incarceration. The absence of these witnesses was a significant blow to the defense. The harm was magnified by the lack of availability of any psychiatric testimony. The State made no argument that Appellant had not been prejudiced by the delay at trial.

Assessment of the four factors of the *Barker* analysis require reversal of the trial court's ruling on Appellant's motion. The period of delay was excessive. The reason for the delay was negligence. Although the negligence in this case cannot be laid entirely at the feet of the State, ultimately it is the State who can bring a defendant to trial. *See Barker id.* at 407. Much of Appellant's delay could have been avoided if his counsel had been attentive. However, it would be a compounded insult to fault Appellant for not properly asserting his right to a speedy trial while he was effectively without counsel and held in darkened isolation making communication impossible. Appellant asserted his right to speedy trial as well as could be expected under the circumstances. He instructed his lawyer to assert the right, alleged that his Sixth Amendment rights were being

22

violated in one of his rambling motions, instructed his attorneys to prepare for trial and instructed his attorneys not to seek a continuance. It would be wrong to expect more from a delusional man held in a dungeon. Finally, appellant was prejudiced by the delay. Appellant was held in deplorable conditions. He believes the conditions were designed to drive him to take his own life. More importantly, his defense was impaired by the loss of two witnesses. The State made no argument that Appellant's defense was not impaired and the trial court did not address the issue. "Of these types of prejudice, the last is the most serious because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Cantu id* at 283. Appellant had little in the way of a defense. His mental health was the most likely avenue to exoneration or mitigation. Time robbed him of his fact witnesses in that area and decisions of the trial court eliminated any possibility of an expert witness. The trial court should have dismissed his case.

## II. Competence

### The Facts

The night before he was arrested, Appellant was the subject of a wellness check by Randall County Deputies for his unusual behavior. When Appellant was arrested he was sitting on a fifteen foot concrete bunker near the interstate

23

watching the sun set. After appointing him a lawyer, the first action taken by the trial court was to order a psychiatric examination of Appellant. Appellant filed motions and testified regarding his strongly held belief that he had an audio transmitting device implanted in his head. Appellant testified that he had a mental disease. Appellant testified that at the time of the commission of the crime he was mentally incapable of thought. Appellant further testified that the conditions of his incarceration had negatively impacted his mental state. Appellant's trial counsel, Don Schofield, filed a motion for psychiatric examination of Appellant and re-urged that motion when the examination ordered was not completed. It is understatement to say that their was a suggestion that Appellant was incompetent. The trial court made three attempts to have an examination of Appellant performed. The Sheriff failed to carry out the order on the first attempt, Appellant refused to comply on the second, and the psychiatrist chose not to execute the third order. As a result of these circumstances, Appellant was never evaluated for incompetency. Despite the suggestions of incompetency and the lack of any expert testimony on the issue, the trial court made no inquiry into the subject. The trial court denied trial counsel's re-urged motion for psychiatric examination without comment or inquiry. Throughout the course of the proceedings, the trial court never made any inquiry of Appellant or trial counsel into the issue of

24

incompetency.

The Law

Article 46B.004 of the Texas Code of Criminal Procedures controls the initial procedure for courts to follow when the issue of incompetency is raised. The relevant sections read as follows:

(a) Either party may suggest by motion, or the trial court may suggest on its own motion, that the defendant may be incompetent to stand trial. A motion suggesting that the defendant may be incompetent to stand trial may be supported by affidavits setting out the facts on which the suggestion is made.

(b) If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial.

(c) On suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial.

(c-1) A suggestion of incompetency is the threshold requirement for an informal inquiry under Subsection (c) and may consist solely of a representation from any credible source that the defendant may be incompetent. A further

25

evidentiary showing is not required to initiate the inquiry, and the court is not required to have a bona fide doubt about the competency of the defendant. Evidence suggesting the need for an informal inquiry may be based on observations made in relation to one or more of the factors described by Article 46B.024 or on any other indication that the defendant is incompetent within the meaning of Article 46B.003.

(d) If the court determines there is evidence to support a finding of incompetency, the court, except as provided by Subsection (e) and Article 46B.005 (d), shall stay all other proceedings in the case.

A criminal defendant who is incompetent may not be put to trial without violating due process. *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996). If the trial judge finds that there is a suggestion of incompetency, he or she shall conduct an informal inquiry to determine if there is some evidence from any source that would support a finding that the defendant is incompetent to stand trial. *See Ex parte LaHood*, 401 S.W.3d 45, 52-53 (Tex.Crim.App. 2013). A suggestion of incompetency has been described as a quantum of evidence that is more than none or a scintilla, that may lead to a finding of incompetence. *Druery v. State*, 412 S.W.3d 523, (Tex.Crim.App. 2013). At the informal inquiry, the trial court should focus on any evidence suggesting incompetency and ignore evidence suggesting

26

competency. *See Turner v. State*, 422 SW.3d 676 at 693 (Tex.Crim.App. 2014). If some evidence is found to exist supporting incompetency, the trial court is required to conduct a formal competency trial. *See id.* at 694.

Analysis

There was more than none, or a scintilla of evidence suggesting Appellant's incompetence. Appellant's testimony that he had been diagnosed with a mental disease should have triggered an informal inquiry and, absent conclusive scientific evidence of competency, a formal trial on the issue. *See Turner id.* Appellant's persistent delusional belief that he had a listening device implanted in his head was also evidence suggesting his incompetence. The conditions of Appellant's incarceration and his belief that the Randall County jail staff was attempting to drive him to suicide merit consideration as well. It appears that the trial court grew tired of attempting to ascertain Appellant's mental status. However, the right to due process should not be discarded for convenience. *See Cooper id.* With the evidence available to the court from trial counsel, the writings of Appellant and Appellant's testimony, the trial court was required to conduct an informal inquiry into Appellant's competency. *See LaHood id.* Far from conducting such an inquiry, the only actions by the trial court on the issue was to deny Appellant's final motion for psychiatric examination without comment. All proceedings

27

should have been stayed until the issue of Appellant's competence was determined in accordance with Article 46B.004(d).

PRAYER

For the foregoing reasons, Appellant respectfully prays that the Court reverse the trial court's ruling on Appellant's motion to dismiss for lack of speedy trial, or reverse the judgement of the trial court and remand the case to the trial court for an informal inquiry to determine if there is evidence to suggest that Appellant is incompetent, and other appropriate proceedings in accordance Article 46B of the Texas Code of Criminal Procedure.

Respectfully submitted by,


   /S/ Eric Coats
Eric Coats
Appellant's Lawyer
SBN: 00783845
1716 S. Polk St.
Amarillo, TX 79102
ecoatslaw@gmail.com

28

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document contains 5724 words.


    /S/   Eric Coats
Eric Coats


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above was electronically delivered to

State's Counsel on March 6, 2015.


    /S/   Eric Coats
Eric Coats